STATE OF NEW JERSEY IN THE INTEREST OF
M. S., JUVENILE-APPELLANT.

STATE OF NEW JERSEY IN THE INTEREST OF
E. O., JUVENILE-APPELLANT.

STATE OF NEW JERSEY IN THE INTEREST OF
D. K., JUVENILE-APPELLANT.

STATE OF NEW JERSEY IN THE INTEREST OF
E. M., JUVENILE-APPELLANT.

Argued February 22, 1977—Decided May 24, 1977.

*Ms. Marcia R. Richman,* Assistant Public Defender, and *Mr. Steven Zamrin,* Assistant Deputy Public Defender, argued the cause for appellants (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Kenneth P. Ply,* Assistant Prosecutor, argued the cause for the respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney; *Miss Sara A. Friedman,* Assistant Prosecutor, on the brief).

*Mr. Lowell Espey,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

SULLIVAN, J. This appeal involves similar but unrelated conduct by four juveniles which resulted in their being charged with delinquency for having left a shelter care facility without permission.[1] They were tried separately in the Juvenile and Domestic Relations Court (Juvenile Court). In each case the trial judge ruled that the juvenile had

---

[1] The Juvenile Act defines "shelter care" as "the temporary care of juveniles in facilities without physical restriction pending court disposition" of the juvenile proceedings. *N. J. S. A.* 2A:4-43(d).

committed an act which if committed by an adult would constitute the crime of "escape" in violation of *N. J. S. A.* 2A:104–6. Each juvenile, therefore, was adjudicated a delinquent under *N. J. S. A.* 2A:4–44. In one of the cases, *State, In Interest of M. S.,* the opinion of the court is reported. 129 *N. J. Super.* 61 (J. & D. R. Ct. 1974).

Appeals were filed in each case and were consolidated for argument in the Appellate Division which upheld the adjudications of delinquency. *State In Interest of M. S., E. O., D. K. and E. M.,* 139 *N. J. Super.* 503 (1976). This Court granted certification on application of the four juveniles. 71 *N. J.* 328 (1976). We now reverse.

In order to understand the issue presented, some discussion of our Juvenile Act, which became effective March 1, 1974, is appropriate. One of the Act's purposes is "to remove from children committing delinquent acts certain statutory consequences of criminal behavior, and to substitute therefor an adequate program of supervision, care and rehabilitation." *N. J. S. A.* 2A:4–42(b). Accordingly, the Act differentiates between acts of serious misconduct by a juvenile which constitute delinquency, *N. J. S. A.* 2A:4–44,[2] and those of a lesser degree of misconduct, com-

---

[2]"2A:4–44. Definition of delinquency

As used in this act, 'delinquency' means the commission of an act by a juvenile which if committed by an adult would constitute:

a. A homicide or act of treason;

b. A high misdemeanor or misdemeanor;

c. A disorderly persons offense; or

d. A violation of any other penal statute, ordinance or regulation.

But, the commission of an act which constitutes a violation of chapters 3, 4, 6 or 8 of Title 39, Motor Vehicles, of the Revised Statutes,[1] or of any amendment or supplement thereof, by a juvenile of or over the age of 17 years shall not constitute delinquency as defined in this act.

L. 1973, c. 306, § 3, eff. March 1, 1974.

---

[1]Sections 39:3–1 et seq.; 39:4–1 et seq.; 39:6–1 et seq.; 39:8–1 et seq."

mission of which classify the juvenile as "in need of supervision" (JINS). *N. J. S. A.* 2A:4-45.[3]

■ Under the statute a delinquent is one who is guilty of serious antisocial conduct which, depending on circumstances, may require detention. On the other hand, a JINS is one who has not really committed an offense against society but only against his or her own best interests.

■■ A juvenile charged with delinquency may be placed in detention (physically restricted facilities) for temporary care pending court disposition. *N. J. S. A.* 2A:4-56(b). A juvenile charged with conduct which under the Act classifies him as being "in need of supervision" cannot be placed in detention but may only be placed in shelter care (without physical restriction) pending court disposition. *N. J. S. A.* 2A:4-56(c). In short, where temporary care of juveniles is required, those charged with serious misconduct are treated differently and are kept separate and apart from those charged with acts of lesser misconduct.

In each of the cases before us the juvenile was originally charged with conduct which under the Act classified

---

[3] "2A:4-45. Definition of 'juvenile in need of supervision'

As used in this act, 'juvenile in need of supervision' means:

a. A juvenile who is habitually disobedient to his parent or guardian;

b. A juvenile who is ungovernable or incorrigible;

c. A juvenile who is habitually and voluntarily truant from school; or

d. A juvenile who has committed an offense or violation of a statute or ordinance applicable only to juveniles.

Evidence of conduct which is ungovernable or incorrigible may include but shall not be limited to:

(1) habitual vagrancy,

(2) immorality,

(3) knowingly visiting gambling places, or patronizing other places or establishments, the juvenile's admission to which constitutes a violation of law,

(4) habitual idle roaming of the streets at night,

(5) deportment which endangers the juvenile's own morals, health or general welfare.

L. 1973, c. 306, § 4, eff. March 1, 1974."

the juvenile as being in need of supervision. *N. J. S. A.* 2A:4–45. Each, by court order, was placed in a shelter care facility pending court disposition. The particular shelter facilities are housed in the YM-YWCA building in Newark. Each juvenile left the shelter without permission, and, having been brought before the Juvenile Court, was adjudicated a delinquent on the ground that this conduct would have constituted the crime of "escape" under *N. J. S. A.* 2A:104–6 if committed by an adult.

The provisions of *N. J. S. A.* 2A:104–6 are as follows:

**"2A:104–6. Prisoners escaping or attempting to escape**

Any person imprisoned or detained in a place of confinement, or being in the lawful custody or control of a penal or correctional institution or of an officer or other person, upon any charge, indictment, conviction or sentence for any crime, or upon any writ or process in a civil action or proceeding, or to await extradition, who by force or fraud escapes or attempts to escape from such place of confinement or from such custody or control, or leaves the building or grounds of his place of confinement without the consent of the officer in charge, is guilty of a misdemeanor."

All counsel in this case, the Public Defender representing the four juveniles, the Essex County Prosecutor representing the State and the Attorney General as *amicus curiae,* agree that a JINS temporarily placed in a shelter care facility by court order should not be adjudicated a delinquent for leaving the shelter without permission.

We conclude that the "escape" concept does not apply to the situations here presented. A JINS placed in a shelter care facility obviously is in the custody of the person in charge of the shelter and is not free to come and go at will. Furthermore, leaving such a facility without permission is contrary to the notion of parental supervision and control which shelter care is designed to provide. Yet, the juvenile's conduct is not in the category of a criminal escape. The unauthorized leaving of a shelter is symptomatic of the very problem for which shelter care is being provided. It would be incongruous to classify a juvenile

as a delinquent for the same kind of conduct which under the Act constitutes him or her as being in need of supervision only.

The crime of escape is an affront to the authority of the State. It is criminal because it offends against social order and the rule of law. A child who runs away from a shelter, though, harms only his or her own well being. Such conduct cannot be considered the equivalent of the crime of escape.

Of course, if the JINS, in running away from the shelter, were to commit an assault and battery, or offend against some other penal statute, an adjudication of delinquency would be appropriate for such conduct. However, where the sole transgression is leaving the shelter without permission, the concept of a criminal "escape" is inappropriate.

The trial courts and the Appellate Division applied the "escape" label to the conduct herein on the ground that it was the only effective way to deal with a JINS who runs away from a shelter. By holding that such conduct would constitute an escape, and therefore an act of delinquency, the juvenile could then be detained in a physically restricted facility.

The difficulty with this approach is that while it solves the immediate problem by giving the court the right to resort to detention, it has at least two adverse consequences. First, the juvenile, originally classified as in need of supervision only, is subject to institutionalization with delinquents, many of whom have committed acts of violence and brutality. Such institutionalization exposes the JINS to the very influences which the Act seeks to avoid. Second, the JINS is adjudicated a delinquent, a term which "has come to involve only slightly less stigma than the term 'criminal' applied to adults." *In re Gault,* 387 *U. S.* 1, 24, 87 *S. Ct.* 1428, 1441, 18 *L. Ed.* 2d 527, 544 (1967). The after effects of labelling a child "delinquent" are particularly unfortunate for a JINS who is merely a runaway.

246

The solution lies in the exercise of stricter supervision and control of the JINS by shelter care personnel. A JINS who is prone to leaving without authorization should be housed in an area where going and coming can be observed and better regulated. Shelter care facilities are "without physical restriction." *N. J. S. A.* 2A:4–43(d). This means that bars, cells, handcuffs and other means of forcible restraint may not be used in a shelter facility. However, this does not mean that some limitation may not be placed on a JIN's freedom of movement. Those in charge of a shelter facility stand in *loco parentis* of a JINS in their custody and would be entitled to exercise the parental control necessary to safeguard the JIN's own welfare. The firm exercise of authority, closer supervision, and the use of shelter areas where going and coming can be more easily observed should in most cases provide adequate means of controlling unauthorized departures.

It may be that the Juvenile Act should make some alternative provision for stricter control over the incorrigible JINS who demonstrates an inability to conform to shelter discipline. If the necessity for this becomes apparent, we are confident that the Legislature will take appropriate action.

The adjudications of delinquency and the judgments based thereon are hereby vacated and the matters remanded to the Juvenile Court for appropriate disposition.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.