1999-NMSC-044

992 P.2d 866

**AMERICAN CIVIL LIBERTIES UNION OF NEW MEXICO, Erin Hartsock, Sam Clarke, Angelina Clarke, Jarrett Hines–Kay, Willy Lusk–Claiborne, Terry Cottle, Jamie Stout and Yvette Stout, Plaintiffs–Appellees and Cross–Appellants,**

v.

**CITY OF ALBUQUERQUE, Defendant–Appellant and Cross–Appellee.**

No. 24763.

Supreme Court of New Mexico.

Nov. 17, 1999.

Krehbiel, Bannerman, Horn & Hisey, P.A., Phil Krehbiel, Rikki L. Quintana, Albuquerque, Gregory S. Wheeler, Albuquerque, for Appellant and Cross–Appellee.

Cates & Hammel, P.C., Kathryn Hammel, Los Lunas, Mark R. Horton, Clovis, Philip B. Davis, Albuquerque, for Appellees and Cross–Appellants.

## OPINION

SERNA, Justice.

{1} The City of Albuquerque (City) appeals from the district court's order, entered in response to the parties' cross-motions for summary judgment, holding that the City's juvenile Curfew Ordinance (Curfew) violates the New Mexico Constitution and is also preempted by the State Children's Code. The district court denied the City's motion for a stay pending appeal. The American Civil Liberties Union of New Mexico, children, parents, and a business owner (Plaintiffs) cross-appeal on the denial of other asserted grounds to strike the Curfew and on the denial of attorney's fees and expenses. We hold that the Children's Code preempts the Curfew and the Safe Teen Operation Program (STOP program), and thus affirm the district court.

### Facts and Background

#### Curfew Ordinance

{2} The City enacted the Curfew in order "to provide for the protection of minors from each other and from other persons, to provide for the enforcement of parental control over and responsibility for children, to protect the general public and reduce the incidence of juvenile criminal activities." Albuquerque, N.M., Revised Ordinances § 12–5–9(A)(2) (1994). The Curfew mandates that it is unlawful for any person under seventeen years of age to remain in a public place or on the premises of an establishment within Albuquerque during curfew hours, for a parent or guardian of a minor to knowingly permit, or by insufficient controls allow, a minor to violate the curfew, and for the owner or employee of an establishment to knowingly allow a minor to remain upon the premises of the establishment during curfew hours. Section 12–5–9(C). Violation of the Curfew is punishable by a maximum fine of $500 and imprisonment of up to ninety days. Albuquerque, N.M., Revised Ordinances § 12–1–99(I) (1994).

### STOP Program

{3} The parties stipulated to the following facts. The City implemented the STOP program, a pilot initiative, from July 19 to September 30, 1996, during which the Curfew was enforced Friday through Sunday nights. During this program, 616 children were taken into custody for alleged curfew violations. Eighty-three of the police reports contain no narrative summary explaining the basis for the stop, and of the remaining children, 106 reports indicate that the stop occurred because of some other suspected criminal violation, most often a traffic violation. The vast majority of children stopped and taken into custody for alleged curfew violations were "talking or walking with others."

{4} Police officers took children into custody under Section 12–5–9 of the Curfew, handcuffed and patted them down at the scene of the curfew violation, and took them to Wells Park Community Center, where the handcuffs were removed. City personnel photographed the children, took physical descriptions, and questioned them. The officers also completed a police report. Information was noted on intake forms, and a copy of these forms was given to the Albu-

querque Public Schools and the State of New Mexico Juvenile Probation and Parole Office. The children were held at the Center until they were released to either a parent or guardian, and if neither could be found, they were released to a probation officer or to a licensed child care shelter.

{5} The police officers did not inform the children of their constitutional right against self-incrimination prior to or after their arrival at Wells Park. Each child was then required to attend an educational session pertaining to the Curfew ordinance. Parents or guardians were invited, but not required, to attend this session.

### Proceedings in the District Court

{6} Plaintiffs filed an action for declaratory and injunctive relief regarding the Curfew for facial constitutional violations in August of 1995, prior to the STOP program. None of the individual Plaintiffs were stopped, taken into custody, cited or prosecuted for violation of the Curfew. The district court held a hearing on the cross-motions for summary judgment in 1997, and issued its final order granting Plaintiffs' motion on September 25, 1997. The court concluded that: (1) the Curfew Ordinance violates the guarantees of Article II of the New Mexico Constitution because it does not provide a mechanism for judicial review of any arrest or detention of the children; and (2) the Curfew is preempted by the Children's Code in that a child may only be taken into custody pursuant to a court order, for the commission of a delinquent act, or by a Juvenile Probation and Parole Officer, under NMSA 1978, § 32A–2–9 (1993). The court denied Plaintiffs' motion on other issues because of the above findings, and denied the City's motion for summary judgment as a matter of law. Finally, the court denied Plaintiffs' request for attorney's fees and costs under the private attorneys general doctrine and the City's motion for a stay of the injunction pending appeal pursuant to Rule 1–062(C) NMRA 1999.

{7} The City appeals, and Plaintiffs cross-appeal. The parties filed a joint motion under NMSA 1978, § 34–5–14(C) (1972) (significant question of law under the state or U.S. Constitutions, or issue of substantial public interest) and Rule 12–606 NMRA 1999 (certification from the Court of Appeals), to certify the case to this Court.

### Discussion

#### Standing

{8} Plaintiffs argue that they have standing to challenge the Curfew because their "previously-lawful activities during curfew hours [were] curtailed by the Curfew Ordinance." Plaintiffs assert that their challenge to the Curfew includes the STOP program as an enforcement scheme. The City argues that Plaintiffs have no standing to challenge the STOP program, as none of them were arrested or charged during this program.

{9} We do not believe that our analysis of this case must be predicated upon the arrest and prosecution of the Plaintiffs before they may seek relief. *See Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (holding that plaintiffs in an abortion case had "standing despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution"). As the United States Supreme Court stated in *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (citations and internal quotation marks omitted).

> When contesting the constitutionality of a criminal statute, it is not necessary that [the plaintiff] first expose himself [or herself] to actual arrest or prosecution to be entitled to challenge [the] statute that he [or she] claims deters the exercise of his [or her] constitutional rights. When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he [or she] should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.

We agree with Plaintiffs that the Curfew curtails their previously legitimate late-night activities, and that the STOP program dem-

onstrates the City's intention to apprehend individuals in violation of the Curfew. Therefore, Plaintiffs have standing to challenge the Curfew and the STOP program.

### Children's Code Preemption of the Curfew

■ {10} Under Article X, Section 6(D) of the New Mexico Constitution, "[a] municipality ... may exercise all legislative powers and perform all functions not expressly denied by general law or charter." This Court has held that "any New Mexico law that clearly intends to preempt a governmental area should be sufficient without necessarily stating that affected municipalities must comply and cannot operate to the contrary." *Casuse v. City of Gallup*, 106 N.M. 571, 573, 746 P.2d 1103, 1105 (1987). In this case, we determine that the Children's Code contains the "express statement of the authority or power denied" that is necessary to preempt a home-rule ordinance under the law articulated in *Apodaca v. Wilson*, 86 N.M. 516, 521, 525 P.2d 876, 881 (1974). For the reasons discussed below, we conclude that the Children's Code preempts the City from enacting this Curfew ordinance because the ordinance establishes criminal sanctions of incarceration and fines for juvenile activity which is not unlawful when committed by adults.

■ {11} Included in the Legislature's stated purposes of the Children's Code is "to provide for the care, protection and wholesome mental and physical development of children" as well as "to provide judicial and other procedures through which the provisions of the Children's Code are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights are recognized and enforced." NMSA 1978, § 32A–1–3 (1993). Further, under NMSA 1978, § 32A–1–8(A) (1995), the children's court has exclusive original jurisdiction of all proceedings under the Children's Code involving a child alleged to be delinquent, neglected, abused, or a child of a family in need of services. We conclude that, through these provisions, the Legislature clearly intended to protect and preserve the legal rights of children in New Mexico. While this language does not prohibit municipalities from drafting ordinances that proscribe specific conduct of children which is unlawful if committed by adults, the procedures within the Children's Code control the manner in which children may be taken into custody, taken into protective custody, or adjudicated. The Curfew, which attempts to criminalize behavior involving juveniles, and the STOP program, which purportedly took children into protective custody, implicate the Children's Code procedures and protections.

■ {12} The City argues that the Curfew does not fall within the Delinquency Act of the Children's Code because the Legislature has, in NMSA 1978, § 32A–2–3(A) (1996), defined a "delinquent act" as "an act committed by a child that would be designated as a crime under the law if committed by an adult." While we agree that a violation of the City's Curfew is not a "delinquent act" because a curfew violation would not be designated as a crime if committed by an adult, we do not agree that the Delinquency Act leaves the City free to criminalize the otherwise lawful behavior of children. We believe the Legislature intended that this definition of a delinquent act in Section 32A–2–3(A) describe penal acts committed· by· juveniles that, due to the offenders' ages, the Legislature chose to label delinquent as opposed to criminal; thus, unless adult sentencing is expressly authorized by the Legislature, unlawful acts committed by juveniles are to be treated as delinquent instead of criminal.[1]

---

1. We acknowledge that the Children's Code expressly permits some categories of juvenile offenders to be subjected to an adult sentence for certain serious offenses, such as murder and aggravated battery. *See* §§ 32A–2–3(H), (I); NMSA 1978, § 32A–2–20 (1996). Violation of a juvenile curfew ordinance, however, is not listed among the serious offenses for which an adult sentence is authorized, and the Curfew's absence from the provisions in the Delinquency Act that allow for adult sentencing lends further support to our conclusion that the Delinquency Act preempts the City from subjecting juvenile curfew violators to an adult sentence as a criminal offender. *Cf. Cooper v. Albuquerque City Comm'n*, 85 N.M. 786, 792, 518 P.2d 275, 281 (1974) ("[W]hen a power, together with the express means of its execution, are constitutionally granted and determined, it is reasonable to infer therefrom that other means of exercising this

{13} The explicitly articulated purpose of the Delinquency Act is "to remove from children committing delinquent acts the adult consequences of criminal behavior, but to still hold children committing delinquent acts accountable." NMSA 1978, § 32A–2–2(A) (1993). This language demonstrates that the Legislature intended to spare children the stigma of the criminal label and protect them from the adult consequences of the criminal justice system. *See* NMSA 1978, § 32A–2–18(A) (1996) ("A judgment in proceedings on a petition under the Delinquency Act … resulting in a juvenile disposition shall not be deemed a conviction of crime nor shall it impose any civil disabilities ordinarily resulting from conviction of a crime…."); NMSA 1978, § 32A–2–19(D) (1996) ("No child found to be delinquent shall be committed or transferred to a penal institution or other facility used for the execution of sentences of persons convicted of crime."). *See generally In re Winship*, 397 U.S. 358, 376, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Burger, C.J., dissenting) (describing a juvenile justice system as "a generously conceived program of compassionate treatment intended to mitigate the rigors and trauma of exposing [children] to a traditional criminal court"). To allow municipalities to criminalize the otherwise lawful behavior of children remaining on public streets during curfew hours, or to characterize any act of a child as criminal, as opposed to delinquent, would circumvent and thereby frustrate the Legislature's intent to protect children and uniformly enforce laws of a penal nature against them. The Delinquency Act comprehensively addresses behavior by children which could be described as criminal if not for the offender's age.

{14} The Curfew creates a penal offense by authorizing incarceration for up to ninety days and a fine of up to $500 for each occurrence of an individual under the age of seventeen who remains in any public place or on the premises of any establishment within Albuquerque during curfew hours. *See* Albuquerque, N.M., Revised Ordinances § 12–1–99(I) ("Each offense, upon conviction is punishable by a fine of not more than $500, or by imprisonment for not more than ninety days,

power were intentionally excluded and should

or by both such fine and imprisonment."). The Curfew ordinance also authorizes a police officer to arrest children sixteen years of age or younger for violating the curfew, *see id.,* § 12–5–9(E), and the City has placed the curfew ordinance within its Criminal Code, *see id.,* § 12–1–1 ("This chapter may be cited as 'Criminal Code of Albuquerque.'"). Thus, with its terminology of "arrest," "conviction," "punishment," and "imprisonment," the City has created a criminal offense that can only be committed by children. Due to this criminal nature of the Curfew, and the fact that it criminalizes only the behavior of people sixteen years of age or younger, it conflicts with the Delinquency Act. We conclude that the Legislature, through the plain language of Section 32A–2–3(A) of the Delinquency Act, preempts the City from enacting and enforcing the Curfew because the ordinance authorizes criminal punishment of children for acts which would not be designated as a crime under the law if committed by an adult.

{15} The Curfew designates previously lawful behavior of young people as criminal in nature. *See City of Roswell v. Gallegos,* 77 N.M. 170, 172, 420 P.2d 438, 439 (1966) (noting that "prosecution for violation of a municipal ordinance is a quasi-criminal proceeding"); *City of Santa Fe v. Baker,* 95 N.M. 238, 241, 620 P.2d 892, 895 (Ct.App. 1980) (same); *City of Clovis v. Curry,* 33 N.M. 222, 224–25, 264 P. 956, 957–58 (1928) (concluding that an ordinance in question authorized proceedings which were criminal in nature); *State v. Melendrez,* 91 N.M. 259, 261, 572 P.2d 1267, 1269 (Ct.App.1977) (noting that the "violation of a municipal ordinance prohibiting shoplifting comes within the meaning of 'crime'"). Although the Curfew criminalizes this behavior for children, it is lawful for those seventeen and older. Again, the Legislature, through the Delinquency Act, exhaustively addresses the acts of children which would be unlawful if committed by an adult, and, instead of defining these acts as criminal for children, the Legislature designates these acts as delinquent. We believe that the Legislature has clearly expressed the view that behavior by children which could be considered criminal is encom-

not be permitted or allowed.").

passed within the Delinquency Act, and that the City is thus prohibited from criminalizing behavior by children which is lawful if committed by an adult.

█ {16} The City argues that the Delinquency Act does not preempt the Curfew because other provisions of the Children's Code authorize protective custody and alternative programs to divert children from the juvenile justice system.[2] However, in spite of how the City characterizes the STOP program's enforcement scheme, the Curfew expressly authorizes the police to arrest children, rather than take them into protective custody, for a Curfew violation. *Compare Ashton v. Brown*, 339 Md. 70, 660 A.2d 447, 452 (1995) (describing an ordinance which instructs a police officer who finds a child violating the curfew to take such child into custody as a child in need of supervision), *with* Section 12–5–9(E). Under Section 12–5–9(E) of the Curfew, "[t]he officer shall not issue a citation or *make an arrest* under this section unless the officer reasonably believes that *an offense* has occurred and that, based on any response and other circumstances, no defense ... is present." (Emphasis added). The only provision of the Children's Code to address children being taken into non-protective custody is within the Delinquency Act. Article II, Section 10 of the New Mexico Constitution allows a warrantless arrest only upon a showing of exigent circumstances. *See Campos v. State*, 117 N.M. 155, 159, 870 P.2d 117, 121 (1994). Similarly, under Section 32A–2–9, a child may be taken into custody pursuant to a court order, "pursuant to the laws of arrest for commission of a delinquent act," or by a juvenile probation and parole officer. *Cf. In re J.F.F.*, 164 Wis.2d 10, 473 N.W.2d 546, 549 (Wis.Ct.App. 1991) ("By limiting the power to take juveniles into custody for ordinance violations that subject the juvenile to the possibility of a forfeiture, the legislature clearly wanted to reserve arrest to those circumstances that were deemed sufficiently serious by local au-

thorities to warrant the imposition of a monetary penalty."). As violation of the Curfew is not a delinquent act, the Curfew's authorization of arrest is in conflict with the Children's Code, as the district judge concluded.

{17} The Children's Shelter Care Act, NMSA 1978, §§ 32A–9–1 to 32A–9–7 (1993), further supports the conclusion that the Children's Code preempts the Curfew because it criminalizes youthful behavior which, if committed by an adult, is not a crime. The Legislature

> finds and declares that appropriate and distinct programs of supervision and care for children are required to fulfill the purposes of the Children's Code ...; that *many children are needlessly detained in secured facilities on charges for acts that would not be criminal if they were committed by an adult;* that these children would benefit from either immediate return to the family or placement in shelter-care homes or nonsecured shelter-care facilities. ...

NMSA 1978, § 32A–9–2 (1993) (emphasis added). We believe that the specific language of this section further indicates that the Children's Code preempts the authority of municipalities to enact or enforce curfew ordinances which subject minors to incarceration for activity which is lawful if committed by an adult.

{18} The Legislature has clearly expressed that acts committed by children which would not be unlawful if committed by adults are not delinquent. We believe that the Legislature has balanced the need to control the behavior of minors against the serious label of "delinquent" and the harsh sanction of incarceration, and chosen to reserve these penalties for behavior which is unlawful when committed by adults. The Legislature clearly wishes to treat children differently than delinquent offenders when they engage in misbehavior that is not unlawful for adults. The stated purposes of the

---

2. The City, relying on its own characterization of the STOP program, repeatedly refers to "protective custody" rather than arrest, as articulated in the Curfew itself. However, because the STOP program was an initial, limited, pilot program which ended after three months, and because the

City contemplates the potential for criminal prosecution of juveniles for violating the Curfew by, for example, noting the procedural consequences "if a criminal conviction is sought" pursuant to the Curfew, the City is acknowledging the criminal nature of the Curfew offense itself.

Curfew are to protect minors from each other and others, to enforce parental control, and to protect the public from juvenile criminal activities. Section 12–5–9(A)(2). Incarceration of up to ninety days appears to be at odds with the purpose of protecting minors from each other and others. Our research reveals few other juvenile curfew ordinances which impose incarceration upon minors for a violation of a curfew.[3] *See, e.g., Hutchins v. District of Columbia*, 188 F.3d 531 (D.C.Cir. 1999) (en banc) (noting that the penalty for a minor in violation of the act is twenty-five hours of community service and suspension of a driver's license for up to one year, and upholding the constitutionality of the curfew); *Schleifer ex rel. Schleifer v. City of Charlottesville*, 159 F.3d 843, 857–58 (4th Cir. 1998) (observing that the penalties for minors violating curfew include verbal warnings, written warnings, and a fine of up to $250, Va.Code Ann. § 18.2–11(d) (Michie 1996), and upholding the constitutionality of the curfew), *cert. denied*, 526 U.S. 1018, 119 S.Ct. 1252, 143 L.Ed.2d 349 (1999); *Qutb v. Strauss*, 11 F.3d 488, 491, 496 (5th Cir.1993) (noting that a minor in violation of the curfew is subject to a fine not to exceed $500, and concluding that the curfew is constitutional); *Village of Deerfield v. Greenberg*, 193 Ill. App.3d 215, 140 Ill.Dec. 530, 550 N.E.2d 12, 14 (1990) (upholding constitutionality of a curfew ordinance, and noting that a violation is a petty offense which results in a ten to 100 dollar fine). *But see Nunez v. City of San Diego*, 114 F.3d 935 (9th Cir.1997) (noting that a minor convicted of a curfew violation commits a misdemeanor, and holding that the curfew is an unconstitutional burden on parents' fundamental rights and is not a reasonable time, place, and manner restriction under the First Amendment).

{19} We hold that the Curfew is preempted. However, this holding does not leave the City without other remedies to alleviate perceived and actual problems with

juvenile misbehavior. Regardless of the time of day at which they occur, the specific examples of juvenile misbehavior which the City cites in its brief, such as unsupervised children under the influence of drugs or alcohol, and young girls at a motel in the company of unrelated adult men, seem to be illustrative of what is meant by "children endangered by their surroundings" under NMSA 1978, § 32A–3B–3(A)(4) (1993). Although we reject the City's attempt to characterize its STOP program enforcement scheme as one involving protective custody, we do not rule out the authority of law enforcement officers to take children into protective custody under Section 32A–3B–3(A)(4) when all requirements of the Children's Code and the New Mexico Constitution are satisfied.

## The STOP Program and Protective Custody

■ {20} Plaintiffs argue that, under the STOP program, the children were arrested, questioned, and "punished" through mandatory re-education, without warnings of their constitutional right against self-incrimination, and without legal representation, a hearing, or a chance to present evidence. The City stresses that the children were not arrested during the STOP program, but simply taken into protective custody. The City declares that the STOP program falls under a different section of the Children's Code, noting that Section 32A–3B–3(A)(4) authorizes a law enforcement officer to take a child into protective custody without a court order when the officer has reasonable grounds to believe that the child is endangered by the child's surroundings and removal is necessary to ensure the child's safety. Even assuming that children apprehended during the STOP program were taken into protective custody rather than "arrested," we hold, for the following reasons, that the STOP program was

---

**3.** We note that the City claims that in a "conscious effort to balance the constitutional rights of the children against the compelling governmental interests in the safety and welfare of children and of the public, the City Council modeled the Curfew Ordinance after the Dallas curfew upheld in *Qutb*." However, while the Dallas curfew is very similar to the Albuquerque Curfew, the Dallas curfew's penalty is merely a fine, and the Curfew in the present case additionally provides for imprisonment of up to ninety days. *Compare Qutb v. Strauss*, 11 F.3d 488, 496 (5th Cir.1993) ("Each offense, upon conviction, is punishable by a fine not to exceed $500."), *with* Section 12–1–99(I).

inconsistent with express provisions of the Children's Code.

{21} The Delinquency Act includes the serious conduct of children which is criminal in nature for all citizens, while other sections of the Children's Code, such as the Families in Need of Court–Ordered Services article, NMSA 1978, §§ 32A–3B–1 to 22 (1993, as amended through 1995), address behavior which, while not criminal, is not in the best interests of the child, such as truancy and running away from home. *See State v. Julia S.,* 104 N.M. 222, 227, 719 P.2d 449, 450 (Ct.App.1986) (distinguishing treatment of delinquent children from that of children in need of supervision under a former version of the Children's code); *Winship,* 397 U.S. at 374 n. 6, 90 S.Ct. 1068 (Harlan, J., concurring) ("The [persons in need of supervision] category was established in order to avoid the stigma of finding someone to be a 'juvenile delinquent' unless he [or she] committed a criminal act."); *State ex rel. M.S.,* 73 N.J. 238, 374 A.2d 445, 447 (1977) ("Under the statute a delinquent is one who is guilty of serious antisocial conduct which, depending on circumstances, may require detention. On the other hand a [juvenile in need of services] is one who has not really committed an offense against society but only against his or her own best interests."). Section 32A–3B–2 addresses situations in which a "child, subject to compulsory school attendance, is absent from school without an authorized excuse more than ten days during a school semester," a "child is absent from the child's place of residence for a time period of twenty-four hours or more without consent of the child's parent, guardian or custodian," or a "child refuses to return home." In other words, this section deals with certain behavior of children, such as truancy and running away from home, which does not amount to delinquent activity or activity which would be criminal if committed by an adult, and authorizes government involvement when such behavior places children in danger because of their surroundings. Certainly, had the City not created a criminal offense with the Curfew, restriction of night-time activities of children would seem more like truancy and running away than delinquent behavior.

{22} In order to take children into protective custody, the Family in Need of Services article requires, among other circumstances, that the officer has reasonable grounds to believe that "the child is endangered by his [of her] surroundings and removal from those surroundings is necessary to ensure the child's safety." Section 32A–3B–3(A)(4). As Plaintiffs observe, the police officers who took the children into custody under the STOP program did not note any particularized finding that these children were in danger. The City argues that the lateness of the hour is inherently dangerous to children. We disagree.

{23} We conclude that the City cannot take children into protective custody without a fact-specific showing that one or more of the specific statutory conditions within Section 32A–3B–3 are met. We reject the City's attempt to create a bright-line rule which automatically defines a child in violation of the Curfew as a child endangered by his or her surroundings. Such a rule is clearly over-inclusive, penalizes innocent conduct, and presents too great a danger that the police or municipalities will use "protective custody" as a subterfuge to avoid constitutional protections that would otherwise apply to warrantless arrests. *See* Samuel M. Davis, *Rights of Juveniles: The Juvenile Justice System* § 3.2, at 3–9 (2d ed.1999) (noting that the potential for abuse in this area is at least as great as it traditionally was in the handling of adults under vagrancy laws); *cf. City of Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 1856, 144 L.Ed.2d 67 (1999) (holding that Chicago's gang-loitering ordinance is unconstitutionally vague in failing to provide fair notice of prohibited conduct or to establish minimal guidelines to govern law enforcement officers); *B.A.A. v. State,* 356 So.2d 304, 306 (Fla.1978) ("The [loitering and prowling] statute is not to be used as a 'catch-all' provision [w]hereby citizens may be detained by police and charged by prosecutors when there is an insufficient basis to sustain a conviction on some other charge."); *J.F.F.,* 473 N.W.2d at 549 (concluding that a search incident to a child's arrest was invalid because police lacked statutory authority to arrest the child for violating a municipal curfew ordinance). Just as

Article II, Section 10 of the New Mexico Constitution requires a particularized showing of exigent circumstances for a warrantless arrest, *see Campos,* 117 N.M. at 159, 870 P.2d at 121, we believe that the Legislature disapproves any local ordinance or enforcement scheme which would authorize police to take a child into protective custody without either a court order or a fact-specific showing that the conditions of Section 32A–3B–3(A)(4) are met. *See* Davis, *supra,* § 3.3, at 3–12 ("The criminal justice system, by preferring the procurement of a warrant whenever practicable, deemphasizes the competence of the police to weigh evidence and make the on-the-street decision to arrest. The juvenile process should operate on no less a standard.").

{24} Further, although the City argues that it acted under the authority of Section 32A–3B–3, the STOP program violated other provisions within the same article. For example, under Section 32A–3B–8(F) (1993), a child taken into protective custody "shall not be fingerprinted or photographed for identification purposes, unless pursuant to a court order." During the STOP program, the children were photographed without a court order, in violation of this provision. Once law enforcement officers take a child into protective custody, the officers must contact the Children, Youth, and Families Department, *see* Section 32A–3B–4(A), deliver the child to his or her parents "with all reasonable speed," *see* Section 32A–4–7(A), or place the child in approved "community-based shelter-care facilities," *see* Section 32A–3B–6. The STOP program, as an enforcement scheme of the Curfew, is inconsistent with these requirements. We reject the City's attempt to validate the STOP program under particular sections of the Children's Code while ignoring other relevant sections within the same articles.

{25} We conclude that the Children's Code preempts the Curfew ordinance because the Curfew creates criminal sanctions against children for violating the Curfew when such behavior is not unlawful if committed by an adult. We further conclude that the STOP program is invalid under the Children's Code because the City failed to follow the procedures of the Code. Because we affirm the district court's ruling upon these grounds, we do not reach Plaintiffs' other claims.

**Plaintiffs' Expenses and Attorney Fees**

■ {26} Finally, Plaintiffs request attorney fees. Generally, absent statutory or other authority, each party is responsible for their own attorney fees. *See Montoya v. Villa Linda Mall, Ltd.,* 110 N.M. 128, 129, 793 P.2d 258, 259 (1990) ("New Mexico adheres to the so-called American rule that, absent statutory or other authority, litigants are responsible for their own attorney's fees."); *Martinez v. Martinez,* 101 N.M. 88, 93, 678 P.2d 1163, 1168 (1984) (stating that the rule for the award of attorney fees is "that each party to litigation must pay his [or her] own counsel fees"); *Norton v. Board of Educ.,* 89 N.M. 470, 472, 553 P.2d 1277, 1279 (1976) (denying attorneys fees in a claim challenging constitutionality of fee collection for public school students).

■ {27} Plaintiffs request this Court to award them discovery sanctions, relying on Rule 1–037 NMRA 1999 (failure to make discovery, allowing reasonable expenses, including attorney's fees), because Plaintiffs' "counsel and paralegal volunteers invested a large amount of time in discovery attempting to make sense of the City's raw data on juvenile crime and victimization, struggling with the numerous errors in the data which the City could not explain." The City contends that discovery rules compelled it to provide the requested data, but did not require the City to expend additional time and money "analyzing, compiling and creating new statistical reports solely for the benefit of the recipient." We agree with the City. We review whether the district court erred in denying attorney fees for an abuse of discretion. *See Gardner v. Gholson (In re Estate of Gardner),* 114 N.M. 793, 845 P.2d 1247, 1258 (Ct.App.1992). We conclude that the district court's decision was not contrary to logic and reason, and thus was not an abuse of discretion. *See New Mexico Right to Choose/NARAL v. Johnson,* 1999–NMSC–028, ¶ 6, 127 N.M. 654, 986 P.2d 450.

{28} Plaintiffs' second claim is based on the City's alleged bad faith. Plaintiffs argue that the City's reliance on *Qutb* was in bad faith because the curfew at issue in *Qutb* was based upon persuasive statistical evidence supporting their curfew and the "City knew it lacked a statistical basis for a night-time juvenile curfew." According to Plaintiffs, the City made the Curfew permanent even though the Chief of Police advised that he could not show a statistical correlation between the Curfew and juvenile crime. The City then allegedly implemented the Curfew through the STOP program without statutory or constitutional requirements. Again, we are unpersuaded. The bad-faith exception applies to conduct which occurs "before the court or in direct defiance of the court's authority." *State ex rel. New Mexico State Highway and Transp. Dep't v. Baca,* 120 N.M. 1, 6, 896 P.2d 1148, 1153 (1995). Because these allegations did not concern conduct before the court or in defiance of the court's authority, this argument is inapplicable. *Id.* at 7, 896 P.2d at 1155 (noting that a court cannot award attorneys fees as a sanction for pre-litigation conduct, "conduct that gave rise to the underlying cause of action").

{29} Plaintiffs request this Court to recognize the "private attorneys general doctrine, which permits an award of expenses and attorneys fees in cases where private enforcement has become necessary and the magnitude of the resulting burden is therefore borne by private litigants whose efforts vindicate important public policies." Similarly, Plaintiffs request this Court to recognize the substantial benefit doctrine, based on the principle that where a successful suit confers a substantial benefit on the members of an ascertainable class, the costs of the litigation should be borne proportionately by all those benefitted. Plaintiffs' argument is unsupported by New Mexico law. *See Johnson,* 1999–NMSC–028, ¶¶ 28–32, 127 N.M. 654, 986 P.2d 450, (rejecting similar arguments, and concluding that "application of the private attorney general doctrine would require the Court to look beyond the proceedings before it to determine which rights are of more societal importance than others, which classes of litigants have protected such rights, and which classes of people have ben-

efitted from such protection"). We decline Plaintiffs' invitation in this case to expand the award of attorney fees.

## Conclusion

{30} We affirm the district court. We conclude that the Children's Code preempts the City from drafting a Curfew ordinance which criminalizes behavior by children which is not unlawful if committed by adults. We also conclude that the STOP program is inconsistent with the statutory requirements of the Children's Code for "protective custody" and is thus invalid. Plaintiffs are not entitled to attorney fees or other costs beyond those which the district court allowed.

{31} **IT IS SO ORDERED.**

MINZNER, C.J., BACA and FRANCHINI, JJ., concur.

MAES, J. (specially concurring).

MAES, Justice (Special Concurrence).

{32} I am in agreement with the majority opinion that the STOP program is inconsistent with the Children's Code. However, I have quite a bit of difficulty, with the preemption rationale which forms the basis for the proposed opinion. I believe that the Children's Shelter Care Act, NMSA 1978, §§ 32A–9–1 to 7 (1993) does not preempt the curfew, since its purpose is to find shelter for children who have been detained in secured facilities on charges for acts that would not be crimes if committed by adults. While this may cover the field of juveniles who have been incarcerated, it does not deal with the exact problem of the arrest of the juvenile in the first place, which is the situation engendered by the curfew. Similarly, as to the Family In Need of Court Ordered Services Article, I believe the majority opinion is correct in likening the violation of curfew to truancy and running away rather than a crime, but these are the subjects of the article, not curfew. Finally, I believe logic demands that it be conceded to the City that the Delinquency Act, NMSA 1978, § 32A–2–1 et seq. covers the field of those acts committed by children which would be designated as crimes if committed by adult, which

does not include violation of curfew, that such violations are not delinquent acts, and that the Act therefore does not preempt the field of acts which are crimes if committed by children but not by adults. I do not believe the spirit of the Act extends so far as to say that it preempts the City from criminalizing behavior by minors which is not unlawful if committed by adults.

{33} I would offer an alternative approach to that taken in the majority opinion. That is, I would address the issue on constitutional grounds. The analysis used by many courts begins with the proposition that the United States Supreme Court "has extolled the right to move about freely, not only as a necessary means to the exercise of other protected activities, but also as an end in itself ." Note, *Assessing the Scope of Minors' Fundamental Rights: Curfews and the Constitution,* 97 Harvard L.Rev. 1163, 1174–75 (1984) (Note) citing *Papachristou v. City of Jacksonville,* 405 U.S. 156, 164, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

> Freedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it makes all other rights meaningful—knowing, studying, arguing, exploring, conversing, observing and even thinking. Once the right to travel is curtailed, all other rights suffer, just as when curfew or home detention is placed on a person.

*Aptheker v. Secretary of State,* 378 U.S. 500, 520, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964). The freedom of movement encompasses all artificial barriers to personal mobility. Note at 1174 citing Laurence Tribe, American Constitutional Law § 15–15 at 953–58 and n. 20 (1978). *See also* Tribe, § 15–14 at 1382–82 & n 23 (2d ed.1988). Government restrictions that inhibit the fundamental rights of minors are valid only if the restrictions serve a "significant state interest ... that is not present in the case of an adult." *Planned Parenthood v. Danforth,* 428 U.S. 52, 75, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) The test is less rigorous than the compelling state interest test applied to restrictions on the fundamental rights of adults, *Carey v. Population Serv. Int'l,* 431 U.S. 678, 693 n. 15, 97 S.Ct.

2010, 52 L.Ed.2d 675 (1977), and the test that is usually used is drawn from *Bellotti v. Baird,* 443 U.S. 622, 634, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). *See Johnson v. City of Opelousas,* 658 F.2d 1065, 1073 (5th Cir. 1981); *Gaffney v. City of Allentown,* 1997 WL 597989 *4 (E.D.Pa.); *In re Spagnoletti,* 122 Ohio App.3d 683, 702 N.E.2d 917, 919 (1997); *State v. J.D.,* 86 Wash.App. 501, 937 P.2d 630, 634 (1997); *Matter of Appeal in Maricopa County,* 181 Ariz. 69, 887 P.2d 599 (Ariz.App.1994). Under *Bellotti,* there are three factors in determining whether a significant state interest exists: "the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child-rearing."

{34} There is heated debate among the cases in the application of the three factors to curfews. The majority seem to hold, as to the first factor, that the lack of evidence, as in this case, that minors tend to be the victims of nighttime crimes more than others belies the position that they are peculiarly vulnerable in the case of a curfew. *Johnson,* 658 F.2d at 1073; *Gaffney* at *4; *Hutchins v. District of Columbia,* 942 F.Supp. 665, 673 (D.D.C.1996); *J.D.,* 937 P.2d at 634. *But see Maricopa County,* 887 P.2d at 606 (plague of crime and drugs, "while not peculiar to minors, is more damaging to them because they are more vulnerable"). As to the second factor, *Bellotti* concerned a minor's right to an abortion, and it was said by the court in *Gaffney* at *4 " 'that the decision to either stay inside or roam at night simply does not present the type of profound decision which *Bellotti* would leave to the state.' " Quoting *Waters v. Barry,* 711 F.Supp. 1125, 1137 (D.D.C.1989).

{35} The third *Bellotti* factor not only demonstrates that there is a fundamental right at stake, but is also a substantive basis for holding the curfew unconstitutional. "A long line of cases has established the Court's view that child-rearing is the role of parents, not impersonal political institutions." Note at 1178. In *McCollester v. City of Keene,* 586 F.Supp. 1381, 1386 (D.N.H.1984), it was held a curfew worked unconstitutionally "by usurping parental discretion in supervising a

child's activities and imposing parental liability even where the parent exercised reasonable control or supervision in authorizing a child's activities which violate the ordinance." The right to rear children without undue governmental interference is a fundamental component of due process, *Ginsberg v. New York*, 390 U.S. 629, 639, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), and "[f]amily autonomy is as much a right of children as of their parents." Note at 1179. Custody, care, and nurture reside first in parents, *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), though the right is not absolute and is subject to reasonable regulation and compelling state interests. *Runyon v. McCrary*, 427 U.S. 160, 178, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). The ordinance in *Qutb v. Strauss*, 11 F.3d 488, 496 (5th Cir. 1993), apparently used as a model for the Albuquerque ordinance, contained broad exemptions allowing parents to make decisions in many areas, a feature missing from the present ordinance (containing exceptions for being accompanied by or on an errand "without any detour or stop" at the direction of a parent or guardian), which is overbroad because it " 'does not aim at evils within the allowable area of [government] control but ... sweeps within its ambit other activities that in ordinary circumstances constitute an exercise' of protected expression or associational rights." *Johnson* at 1071, quoting *Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

{36}    Thus, because the curfew burdens fundamental rights, it must be narrowly tailored to serve compelling state interests. *Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). The instant ordinance is purportedly narrowly drawn because a defense to violation is that the defendant was "[e]xercising First Amendment rights protected by the United States Constitution, such as the free exercise of religion, freedom of speech, and the right of assembly." Alb. City Ords., § 12–5–9(D)(1)(h). While this may be a way around overbreadth on First Amendment grounds, this ordinance is impermissibly vague, as I believe is intuitively obvious. The Court of Appeals said in *Old*

*Abe Co. v. New Mexico Mining Comm'n*, 121 N.M. 83, 91, 908 P.2d 776 (Ct.App.1995):

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. *Grayned v. City of Rockford*, [408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)]

{37}    Under a curfew with such wording, "what are First Amendment rights? What is considered to be free speech? ... What of expressive conduct that does not involve oral or written communication? ... What types of speech are protected by 'free speech'? ... And what of the 'right of assembly'? Do two friends have the right to assemble at a coffeehouse?" *Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 871 (4th Cir.1998) (Michael, J, dissenting). These questions are

difficult enough for courts, Congress, and constitutional scholars, let alone for someone with no legal training. And when the answers are given, they are often imprecise and turn on the specifics of a case and a balancing of many factors. Furthermore, First Amendment jurisprudence is a vast and complicated body of law that grows with each passing day. As a result, criminal conduct cannot be defined by simply referring to the title (First Amendment) or subtitle (speech or assembly) of a particular right.

*Id.*  But see *Ramos v. Town of Vernon*, 1999 WL 304694 *5–*7 (D.Conn.) (ordinance not

328

vague despite "First Amendment exception" not describing or identifying specific rights; no chilling effect; no basis for excessive police interpretive discretion); *Qutb* at 494 (noting First Amendment exception to curfew ordinance).

{38} In sum, I believe this ordinance is both overbroad in the encroachment on parental rights, and vague in the attempt to define conduct by generalized reference to the First Amendment.