[No. 36797-8-I. Division One. June 2, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. J.D., *Appellant.*

---

*Breean L. Beggs* and *Brett & Daugert, L.L.P.*, for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Royce S. Buckingham, Deputy*, for respondent.

*Joan E. Hoisington* on behalf of the City of Bellingham, amicus curiae.

*Kraig L. Baker* on behalf of American Civil Liberties Union, amicus curiae.

AGID, J. — J.D. appeals his conviction for resisting arrest. He admits that he ran from an officer who tried to cite him for violating the Bellingham curfew, BMC 10.62, but argues that he was entitled to passively resist the citation because the curfew is unconstitutional. The State moved to dismiss J.D.'s conviction under RAP 7.2(e). We grant the State's motion and dismiss J.D.'s conviction. In so doing, we render the appeal moot. We conclude, however, that the constitutional issues it presents fall into that narrow category of moot cases requiring review and reach the merits of J.D.'s appeal. We hold that the Bellingham curfew ordinance in effect when J.D. was arrested, and as later amended, infringes on minors' fundamental freedom of movement and expression and it is not narrowly tailored to address the problem of juvenile crime. We also hold that it is unconstitutionally vague.

## FACTS

In 1992, the City of Bellingham enacted a youth curfew in an attempt to curb increasing crime in the central busi-

ness district (CBD). The City Council found that the area was "a magnet for juvenile gatherings," that drugs and alcohol were common at the gatherings, and that assaults and disorderly conduct were increasing as a result. Under the law, minors 15 years old or younger are prohibited from being in any public area of the CBD between 10 p.m. and 5 a.m. Sunday through Thursday and 11 p.m. to 5 a.m. Friday and Saturday. BMC 10.62.030(A).[1] The ordinance exempts minors in the company of a guardian, on an emergency errand, working, in a vehicle engaged in interstate travel, within one block of legal residence, traveling from an "activity," or authorized by special permit. BMC 10.62.030(C). As first enacted, the ordinance contained a "stop and identify" clause which allowed officers to stop any person who they believed to be in violation of the curfew and ask for identification. This section has since been repealed. *See* BMC 10.62.[2]

Bellingham Officers Sasaki and Johnson contacted 15-year-old J.D. at 12:45 a.m. on November 6, 1993, under the stop and identify provision, intending to cite him for a curfew violation. The officers had seen J.D. several times that night and warned him that he would be cited if he refused to leave the CBD. J.D. walked away from the officers as they approached him and eventually began to run. Sasaki caught J.D., knocked him to the ground and arrested him. Sasaki broke J.D.'s arm during the arrest, and he had emergency surgery the following day. The State eventually charged J.D. with resisting arrest under RCW 9A.76.040. A superior court commissioner found that the Bellingham curfew was unconstitutional and dismissed the resisting arrest charges. The State moved for reconsid-

---

[1] We are aware that the Bellingham City Council has amended BMC 10.62 since this case arose. However, the amendments did not eliminate the constitutional problems with its core provisions. The full text of BMC 10.62.030 is reprinted in Appendix A.

[2] J.D. argued in his brief that this stop and identify provision was also invalid. We need not reach this issue because we dismiss his conviction for resisting arrest and Bellingham has repealed this provision.

eration and a superior court judge reinstated the charges, finding that the officers were acting in good faith.[3]

## DISCUSSION

A. Mootness

After the notice of appeal was filed, the State moved in this court to enter a trial court decision dismissing the charges under RAP 7.2(e). It argued that the appeal would require a great deal of time and money and would not be worth the resources because this was a relatively minor case. We grant the State's motion. While the dismissal makes the case technically moot, review is still appropriate under the mootness doctrine.

■ We will ordinarily not review a moot case unless it presents issues of continuing public interest or we determine that a decision on the merits is appropriate, considering "(1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur." *In re Swanson*, 115 Wn.2d 21, 24, 793 P.2d 962, 804 P.2d 1 (1990) (quoting *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984)). This case meets both tests. Many Washington communities are confronted with increasing juvenile crime and have considered or enacted curfew ordinances as preventative measures. In 1973, the Supreme Court held that a municipality may enact a narrowly tailored curfew ordinance, but no court has discussed how a curfew could meet this requirement. *City of Seattle v. Pullman*, 82 Wn.2d 794, 514 P.2d 1059 (1973). Given the

[3]J.D. argues here and in the trial court that he was entitled to passively resist the officers because they were attempting to cite him under an unconstitutional statute. The State argues that running from officers is equivalent to an assault on officers and is prohibited under *State v. Mierz*, 127 Wn.2d 460, 901 P.2d 286 (1995). While we need not reach this issue because we grant the State's motion to dismiss, we agree with the State that running from an officer has the same potential for danger as a direct act of resistance. Therefore, irrespective of the constitutionality of the state action, a suspect may not flee from an officer who is acting in good faith.

number of extant curfew ordinances, the pervasive nature of the problem they seek to confront, and the lack of any guidance on how a municipality can enact a constitutionally-valid curfew ordinance, we conclude that the public interest mandates an opinion in this case. We are also encouraged to review the curfew ordinance even though this case is moot because Bellingham and Whatcom County officers stop minors under the curfew, but neither jurisdiction prosecutes infractions where the minor challenges the constitutionality of the ordinance. Under these unique circumstances where two jurisdictions use the ordinance to stop minors but avoid review of its constitutionality by dismissing their cases, review is particularly appropriate.

B. Freedom of Movement

We first consider whether the curfew unreasonably interferes with minors' right to freedom of movement. Adults' right to freely move about and stand still has been recognized as fundamental to a free society. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972). "[F]reedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningful—knowing, studying, arguing, exploring, conversing, observing and even thinking." *Aptheker v. Secretary of State*, 378 U.S. 500, 520, 84 S. Ct. 1659, 12 L. Ed. 2d 992 (1964) (Douglas, J., concurring). This freedom is rooted both in the First Amendment's protection of association and expression and in the fundamental liberties of the Fifth Amendment. *Waters v. Barry*, 711 F. Supp. 1125, 1134 (D.D.C. 1989). Fundamental though it may be for adults, states may sometimes curtail minors' freedoms to provide them additional protection, even at the expense of their full constitutional rights. When a state has a strong interest in protecting minors, it may restrict their rights in ways in which they could not restrict adults'. *Prince v. Massachusetts*, 321 U.S. 158, 64 S. Ct. 438, 88 L. Ed. 645 (1944). But a state's right to re-

strict minors' fundamental rights is not unlimited. Courts consider: (1) the particular vulnerability of children; (2) their inability to make crucial decisions; and (3) the importance of the parental role in child rearing to determine whether the State has a significant enough interest in protecting minors that it may restrict these rights. *Bellotti v. Baird*, 443 U.S. 622, 634, 99 S. Ct. 3035, 61 L. Ed. 2d 797 (1979). In the context of curfew ordinances, courts have disagreed about whether minors have the same right to freedom of movement as adults. *Compare Johnson v. City of Opelousas*, 658 F.2d 1065 (5th Cir. 1981), *with Waters*, 711 F. Supp. at 1136-37. Our analysis of the *Bellotti* factors convinces us that they do.

First, minors under 15 years old are not peculiarly vulnerable to crime. Crime touches all of society and there is no evidence that minors under 15 years old are more likely to be affected by it than any other group. *See, e.g., Hutchins v. District of Columbia*, 942 F. Supp. 665, 673 (D.D.C. 1996); *Waters*, 711 F. Supp. at 1137. Nor does the curfew aid minors in making essential decisions. The *Bellotti* court recognized that the state may have an interest in limiting minors' right to make "important, affirmative choices with potentially serious consequences." *Bellotti*, 443 U.S. at 635. But as one court considering a curfew said, "the decision to either stay inside or roam at night simply does not present the type of profound decision which *Bellotti* would leave to the state." *Waters*, 711 F. Supp. at 1137. We agree with the *Waters* court that a minor's choice to stay out past 10 p.m. on a weekday, for whatever reason, is not the kind of important life decision that the state has an interest in making for the minor. Finally, the curfew does not foster the parent-child relationship as the *Bellotti* court portrayed it. Rather, the curfew interferes with parental control because it prohibits parents from allowing their children to participate in beneficial programs or groups which may keep them out after curfew hours. The *Bellotti* factors do not support a conclusion that the State may abridge minors' freedom of movement where it could not so limit adults.

Because it impacts a fundamental right, we consider the curfew's constitutionality under the strict scrutiny test. In *Seattle v. Pullman*, the court agreed that minor curfews are subject to strict scrutiny: "Similarly, minor curfew ordinances may be permissible where they are specific in their prohibition and necessary in curing a demonstrable social evil." *Pullman*, 82 Wn.2d at 803. The question then becomes whether the ordinance is narrowly tailored to promote a compelling state interest. *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969).

Before a municipality can enact valid legislation which infringes on a fundamental right like freedom of movement, the Government must prove a compelling need. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 115 S. Ct. 2097, 2117-18, 132 L. Ed. 2d 158 (1995). It need not have scientific or exact proof of the need for legislation. *Ginsberg v. New York*, 390 U.S. 629, 642, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968). Bellingham enacted its curfew in response to rising crime rates in the CBD. It hoped to reduce juvenile crime and protect young people from becoming victims of crime. In the hearings on the ordinance, the Council heard testimony about crime in the CBD and considered the curfew as a possible solution. While no statistics about crime in the CBD were before the Council at the time it voted on the ordinance and it relied solely on anecdotal evidence from the police chief, there was sufficient testimony to support the Council's finding that a crime problem exists in the CBD. We also agree with the Council that crime prevention and protecting minors from becoming victims are sufficiently compelling interests to survive strict scrutiny. The curfew ordinance thus meets the first prong of the test.

But it must also be narrowly tailored to meet the governmental purpose. To be narrowly tailored, there must be an evidentiary nexus between a law's purpose and effect. *Hutchins*, 942 F. Supp. at 675. Other courts have struck down similar curfew ordinances because their reach was too broad. Noting that the number of juveniles

engaged in safe and innocent activity almost certainly outnumbers those engaged in criminal activity, the courts have held that confining all of them to their homes or a few designated activities without evidence that such Draconian restrictions were necessary to address juvenile crime is not a narrowly tailored response to the problem. *See Hutchins*, 942 F. Supp. at 676; *Waters*, 711 F. Supp. at 1136. The record in this case also fails to provide evidence of a sufficient nexus between the curfew and juvenile victimization or crime rates to withstand strict scrutiny.[4] In fact, the only evidence before us shows that, according to Bellingham's own officials, the curfew has had no impact at all on juvenile crime. Peggy Slavick, *Juvenile Curfew and Parental Responsibility Ordinances in Washington State*, WASHINGTON STATE INSTITUTE FOR PUBLIC POLICY, March 1996, app. A. Like the curfew the Supreme Court invalidated in *Seattle v. Pullman*, this one also lacks "the requisite connection to the ordinance's alleged purpose of protecting minors." 82 Wn.2d at 801. Because the law is not narrowly tailored to prevent juvenile crime or to protect minors from becoming victims, we hold that it is an unconstitutional infringement on minors' freedom of movement.

## C. Freedom of Expression

The curfew's broad reach also impermissibly infringes on minors' right of free expression. The United States Supreme Court has long recognized that minors have the same fundamental right of expression as adults. *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 511, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969). Therefore, the State may limit this freedom only if its ac-

---

[4]We recognize that the City of Bellingham did not have the opportunity to create a record in support of the curfew because it chose not to defend the curfew's constitutionality and to dismiss J.D.'s conviction. Constitutional issues are normally raised in an action for a declaratory judgment in which the Government has an opportunity to complete the record. However, the City never argued that it would have added anything to the record before us, or that it had any additional evidence to support the curfew. It is therefore appropriate to rely on the record before the Council as presented by the parties in this case.

tion is narrowly tailored to serve a compelling purpose. *Waters,* 711 F. Supp at 1135. Some curfews have been upheld because they have a broad exception for First Amendment activities. *See Qutb v. Strauss,* 11 F.3d 488 (5th Cir. 1993) (upholding the Dallas, Texas ordinance), *cert. denied,* 511 U.S. 1127 (1994). But the Bellingham curfew permits only minors engaged in "activities" to be in public areas of the CBD and contains no specific exception for expressive activities. As another court considering a similar curfew noted, protected expressive conduct like participation in study groups or youth vigils and protests which does not fall within the ordinance's narrow exclusions will disappear. *Waters,* 711 F. Supp. at 1135. This is too great an impact on legitimate protected expression. Because Bellingham's ordinance infringes on minors' right to free expression and is not narrowly tailored to serve the City's purpose, it is an invalid restraint on expression.

D. Vagueness

 J.D. finally contends that the Bellingham curfew is unconstitutionally vague. Every ordinance must be sufficiently clear to give a person of ordinary intelligence fair notice of what conduct is prohibited and provide explicit standards for officers enforcing the law. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). BMC 10.62 excepts minors en route to or from "an activity including, but not limited to, dance, theater presentations, and sporting events." BMC 10.62.030(C)(6). The ordinance does not indicate whether an exempt "activity" would include a social gathering, a book club, a science group, or other group event not organized by some overseeing body. In fact, the listed examples of "activities" give the impression that such meetings are not "activities" as defined in the statute and only organized or formal events are exempted. Because the ordinance is unclear about what is and is not an exempted activity, it fails to provide explicit standards for enforcement. Police officers do not have sufficient guidance to determine whether a minor traveling from an event other than those specifi-

cally listed may or may not be cited under the ordinance. Therefore, we hold that BMC 10.62 is also unconstitutionally vague.

We declare BMC 10.62 unconstitutional and grant the State's motion to dismiss.

COLEMAN and Cox, JJ., concur.

## APPENDIX A

### BMC 10.62.030 — Curfew For Minors.

A. No minor 15 years or younger shall be in or remain in any public place in the CBD between the hours of 10:00 p.m. and 5:00 a.m., Sunday through Thursday, and between the hours of 11:00 p.m. and 5:00 a.m., Friday through Saturday.

B. During school vacations and holidays, and on nights preceding school vacations and holidays, Friday and Saturday curfew hours shall be in effect.

C. The provisions of paragraphs A, B and C shall not apply to the following circumstances:

 (1) When the minor is accompanied by a parent, guardian, custodian or other adult person having custody or control of such minor.

 (2) When the minor is on an emergency errand or specific business or activity directed or permitted by his parent, guardian or other adult person having the care and custody of the minor.

 (3) When the presence of the minor is connected with or required by some legitimate employment, trade, profession or occupation and the minor is traveling by direct route to or from such place of employment, trade, profession, or occupation.

 (4) When the minor is in a motor vehicle and engaged in interstate travel with the consent of a parent, guardian or other adult person having custody or control of such minor.

 (5) When the minor is within one block of his/her legal residence.

 (6) When the minor is traveling by direct route to or from an activity including, but not limited to, a dance, theater presentation, and sporting events. Minors who attend such activities shall return to their homes or usual places of abode within one-half hour after the activity has ended.

 (7) When the minor, or a group of minors, has been authorized by special permit obtained from the Chief of Police to be in the CBD during curfew hours for circumstances not provided for by the other exceptions set forth in this ordinance.

Review granted at 134 Wn.2d 1006 (1998).