FILED
COURT OF APPEALS
DIVISION II

2015 AUG 11 AM 9:09

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45777-6-II |
| Respondent, | |
| v. | |
| ANDREW HILTON. SMITH, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Andrew Hilton Smith appeals his failure to register as a sex offender conviction following a bench trial. We hold that (1) a defendant can waive his right to a jury trial, (2) the failure to register as a sex offender statute does not unconstitutionally impair the right to travel and freely move, (3) any error in allowing Smith to be handcuffed at his bench trial was harmless, and (4) his trial counsel was not deficient for failing to object to the handcuffs. Therefore, we affirm Smith's conviction. However, we remand for resentencing because the trial court improperly included out-of-state convictions without determining their comparability with Washington statutes. On remand, the trial court shall consider Smith's current or future ability to pay before imposing discretionary legal financial obligations.

## FACTS

The underlying facts in this case are not disputed. The State charged Smith with failure to register as a sex offender under former RCW 9A.44.130 (2011) and former RCW 9A.44.132(1)

(2011).[1] Smith filed a waiver of his right to a jury trial.[2] Smith stipulated that he had been convicted of a sex offense that required registration.

At the bench trial, Smith appeared in handcuffs. Defense counsel requested that the handcuffs be removed so that Smith was able to communicate with defense counsel. In response to the trial court's inquiry, the Department of Corrections officer stated that he[3] was comfortable with removing one of Smith's handcuffs. The trial court determined Smith's dominant hand, and the officer removed one handcuff.[4] Smith did not object to the removal of only one handcuff. The trial court found Smith guilty of failure to register as a sex offender.

At sentencing, Smith stipulated to the criminal history provided by the State.[5] The felony judgment and sentence included two prior convictions from Oregon. Smith did not object to the inclusion of the Oregon convictions. Smith also did not object to the trial court's calculation of his offender score. The State and defense counsel agreed that the standard range was 22 to 29 months based on Smith's offender score. The State requested that the trial court impose standard legal financial obligations (LFOs) and an additional $100 fingerprinting cost. The trial court

---

[1] Former RCW 9A.44.132(1) provided that "[a] person commits the crime of failure to register as a sex offender if the person has a duty to register under [former] RCW 9A.44.130 for a felony sex offense and knowingly fails to comply with any of the requirements of [former] RCW 9A.44.130."

[2] Presumably, Smith pleaded not guilty, although Smith did not provide a record of his pleading.

[3] The record does not indicate the name or gender of the officer.

[4] Presumably, the officer removed the handcuff from Smith's dominant hand, but the record does not indicate which hand.

[5] Defense counsel stated, "[P]ertaining to the history that has been provided, Mr. Smith does stipulate to those prior convictions." Verbatim Report of Proceedings (VRP) at 126.

No. 45777-6-II

sentenced Smith and imposed the "standard" LFOs,[6] including the $100 fingerprinting cost.

Verbatim Report of Proceedings (VRP) at 131. Smith did not object to either the State's request

for or the trial court's imposition of LFOs. Smith appeals.

ANALYSIS

A.    JURY TRIAL WAIVER

Smith claims that his conviction is invalid because he was found guilty without a jury trial.

Specifically, Smith argues that under article I, sections 21 and 22 of the Washington Constitution,

a criminal defendant may not waive a jury trial.[7] We disagree.

We review constitutional issues de novo. *State v. Benitez*, 175 Wn. App. 116, 126, 302

P.3d 877 (2013). Article I, section 21 provides,

> The right of trial by jury shall remain inviolate, but the legislature may provide for
> a jury of any number less than twelve in courts not of record, and for a verdict by
> nine or more jurors in civil cases in any court of record, and for waiving of the jury
> in civil cases where the consent of the parties interested is given thereto.

Article I, section 22 also provides,

> In criminal prosecutions the accused shall have the right . . . to have a speedy public
> trial by an impartial jury of the county in which the offense is charged to have been
> committed.

---

[6] Smith's LFOs consisted of $500 victim assessment fee, $100 deoxyribonucleic acid (DNA) testing fee, $200 criminal filing fee, $110 "sheriff service fees," $150 incarceration fee, $825 attorney fees, and $100 fingerprinting fee. Clerk's Papers (CP) at 8. The victim assessment fee, DNA fees, and filing fees are mandatory LFOs. *See State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). The attorney fees, sheriff service fees, incarceration fees, and fingerprinting fees are discretionary LFOs. *See Lundy*, 176 Wn. App. at 107. On appeal, Smith assigns error to the imposition of attorney fees and fingerprinting fees.

[7] Smith does not argue that his waiver of a jury trial was not knowing, intelligent, or voluntary, or that the record does not adequately establish that his waiver was valid.

3

Smith claims that a *Gunwall*[8] analysis is required because Washington's constitutional right to a jury trial is broader than the federal constitutional right. Smith argues that applying a *Gunwall* analysis to article I, sections 21 and 22 will define the scope of a valid waiver of these constitutional provisions. And he suggests that such an analysis will show that all felony cases in Washington must be tried to a jury, regardless of the party's wishes.[9]

But *Gunwall* "addresses the extent of a right and not how the right in question may be waived." *State v. Pierce*, 134 Wn. App. 763, 773, 142 P.3d 610 (2006). In *Pierce*, we explained that although Washington's constitutional right is more expansive than the federal right, it does not follow that additional safeguards are required to validly waive the more expansive right. *Id.* Thus, the extent of protection offered under the state constitution has no bearing on the legal standard for waiving the right. *Id.* Accordingly, a *Gunwall* analysis does not apply to the issue of waiver of a state or federal constitutional right. *Id.*

We have repeatedly declined the invitation to reconsider *Pierce*. Washington allows a defendant to waive a jury trial. *Benitez*, 175 Wn. App. at 127; *State v. Stegall*, 124 Wn.2d 719, 723, 881 P.2d 979 (1994); *see also State v. Forza*, 70 Wn.2d 69, 70-71, 422 P.2d 475 (1966)

---

[8] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

[9] Although Smith asserts that a *Gunwall* analysis is necessary, he does not actually compare the state and federal constitution in his brief. The purpose of a *Gunwall* analysis is to determine whether the state constitution should be interpreted as being more protective of individual rights than the federal constitution. However, that does not appear to be what Smith is arguing. Rather, Smith appears to argue that the state constitution does not allow a criminal defendant to waive a jury trial. We disagree. *See Benitez*, 175 Wn. App. at 126-27; *State v. Lane*, 40 Wn.2d 734, 736, 246 P.2d 474 (1952); RCW 10.01.060.

(holding the right to a jury trial is subject to a knowing, intentional, and voluntary waiver); *State v. Lane*, 40 Wn.2d 734, 737, 246 P.2d 474 (1952) (holding defendant may waive a jury trial).

B.     CONSTITUTIONALITY OF FORMER RCW 9A.44.130—SEX OFFENDER REGISTRATION

Smith claims that the sex offender registration statute, former RCW 9A.44.130, is unconstitutional on its face. Specifically, Smith argues that the statute is unconstitutionally broad and burdens his fundamental right to travel and right to freedom of movement. We disagree.

We review the constitutionality of a statute de novo. *State v. Enquist*, 163 Wn. App. 41, 45, 256 P.3d 1277 (2011), *review denied*, 173 Wn.2d 1008 (2012). "To demonstrate that [former] RCW 9A.44.130 is unconstitutional on its face, [Smith] must show that 'no set of circumstances exists in which the statute, as currently written, can be constitutionally applied.'" *State v. Smith*, 185 Wn. App. 945, 952, 344 P.3d 1244, *review denied*, ___ P.3d ____ (July 8, 2015) (quoting *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004)).

Smith asserts that the statute impairs the constitutional right to travel. "The right to travel, which includes the right to travel within a state," and the right to freely move are fundamental under the United States Constitution. *Enquist*, 163 Wn. App. at 50; *State v. J.D.*, 86 Wn. App. 501, 506, 937 P.2d 630 (1997). Regulations limiting fundamental rights may only be justified by a compelling state interest. *Enquist*, 163 Wn. App. at 50. A state law implicates the right to travel when the law's primary objective is to deter travel and the law actually deters travel. *Id.*; *Smith*, 185 Wn. App. at 953.

Smith argues that former RCW 9A.44.130 impairs his fundamental right to travel because he may be subject to criminal prosecution for leaving his residence for more than three nights. Smith is incorrect.

We recently decided this precise issue in *Smith*, 185 Wn. App. at 952. In *Smith*, we rejected the claim that former RCW 9A.44.130 prevented the defendant from leaving his home for more than three nights. *Id.* at 953. *Smith* held that former RCW 9A.44.130 does not impair the constitutional right to travel and to freely move. *Id.* at 954. *Smith* also held that even if former RCW 9A.44.130 did impair the right to travel, that impairment is justified by a compelling state interest. *Id.* at 955. Accordingly, Smith's claim fails.

C.    RESTRAINTS

Smith argues that the trial court violated his due process rights by allowing him to be partially handcuffed during his bench trial.[10] We disagree.

We review a trial court's decision to shackle a defendant for abuse of discretion. *State v. Turner*, 143 Wn.2d 715, 724, 23 P.3d 499 (2001); *State v. Walker*, 185 Wn. App. 790, 803, 344 P.3d 227 (2015). A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *Walker*, 185 Wn. App. at 799-800. "'It is fundamental that a trial court is vested with the discretion to provide for courtroom security, in order to ensure the safety of court officers, parties, and the public.'" *Turner*, 143 Wn.2d at 725 (quoting *State v. Hartzog*, 96 Wn.2d 383, 396, 635 P.2d 694 (1981)). The trial court "'must exercise discretion in determining the extent to which courtroom security measures are necessary to maintain order and prevent injury. That discretion must be founded upon a factual basis set forth in the record.'" *State v. E.J.Y.*, 113 Wn. App. 940, 951, 55 P.3d 673 (2002) (quoting *Hartzog*, 96 Wn.2d at 400).

---

[10] Smith argues that the trial court erred by requiring Smith to wear a leg brace at trial. However, the record does not show that Smith was wearing leg braces or any leg restraints. Presumably, Smith meant to argue that the trial court erred by requiring him to wear one handcuff.

A criminal defendant is entitled to be free from restraints at trial except under extraordinary circumstances. *E.J.Y.*, 113 Wn. App. at 951. "'Restraints are viewed with disfavor because they may abridge important constitutional rights, including the presumption of innocence, privilege of testifying in one's own behalf, and right to consult with counsel during trial.'" *Turner*, 143 Wn.2d at 725 (quoting *Hartzog*, 96 Wn.2d at 398).

However, "[a] claim of unconstitutional shackling is subject to harmless error analysis." *State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998). The "error does not require reversal unless it is shown that the use of restraints substantially affected the trial court's fact finding." *E.J.Y.*, 113 Wn. App. at 952; *Hutchinson*, 135 Wn.2d at 888 (holding that the defendant was required to "show the shackling had a substantial or injurious effect or influence on the jury's verdict"). Further, the likelihood of prejudice is significantly reduced in a proceeding without a jury. *E.J.Y.*, 113 Wn. App. at 952.

Smith argues that lack of a record establishing the need for handcuffs is reversible error. Smith does not offer argument that his handcuffs resulted in prejudice or affected the trial court's fact finding ability,[11] or otherwise address harmless error.

---

[11] To the extent that Smith argues that the improper use of restraints is presumptively prejudicial and therefore, requires reversal, his argument fails. To support this argument, Smith relies on *In re Davis* in his opening brief and *State v. Clark* in his reply brief. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 101 P.3d 1 (2004); *State v. Clark*, 143 Wn.2d 731, 24 P.3d 1006 (2001). Both *Davis* and *Clark* involved jury trials and are distinguishable. *Davis*, 152 Wn.2d at 694; *Clark*, 143 Wn.2d at 774. Furthermore, both *Davis* and *Clark* held that a claim of unconstitutional shackling is subject to a harmless error analysis, *Davis*, 152 Wn.2d at 694; *Clark*, 143 Wn.2d at 775, and both *Davis* and *Clark* found that any error in restraining the defendant was harmless. *Davis*, 152 Wn.2d at 697-98; *Clark*, 143 Wn.2d at 777.

The State appears to concede that the trial court did not make an adequate record of why it allowed Smith to remain partially handcuffed.[12] However, the State argues that that Smith has not shown that the handcuffs substantially affected the trial court's fact finding, and any error was harmless. Further, the State argues that without a jury, the likelihood of prejudice was greatly reduced. We agree.[13]

Here, there is little risk of prejudice because there was no jury. *See E.J.Y.*, 113 Wn. App. at 952. And, one of Smith's handcuffs was removed to allow Smith to communicate with defense counsel, which demonstrates that the trial court considered a less restrictive alternative. VRP at 5-6. Accordingly, the absence of a record establishing the basis for restraints is harmless error, and Smith's claim fails. *See E.J.Y.*, 113 Wn. App. at 952 (holding that the improper use of restraints do not "require reversal unless it is shown that the use of restraints substantially affected the trial court's fact finding").

D.    INEFFECTIVE ASSISTANCE OF COUNSEL

Smith argues that his trial counsel was ineffective for failing to object to Smith being handcuffed at trial. We disagree.

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). A defendant claiming ineffective assistance of counsel has the

---

[12] However, contrary to Smith's contention, the State does not appear to concede "that the trial court allowed [Smith] to be brought to trial in restraints in the absence of any impelling necessity." Reply Br. of Appellant at 4.

[13] For the first time in his reply brief, Smith claims that the restraints interfered with his right to testify. We do not address issues raised for the time in the reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

burden to establish that (1) counsel's performance was deficient and (2) the performance prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Our scrutiny of counsel's performance is highly deferential; it strongly presumes reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To rebut this presumption, a defendant bears the burden of establishing the absence of any legitimate trial tactic explaining counsel's performance. *Id.*

In support of his argument that his trial counsel was deficient, Smith argues that a "reasonable attorney would have acted to protect his client's constitutional right to appear in court free from restraint." Br. of Appellant at 12. This argument fails because the record shows that Smith's trial counsel asked the court to remove Smith's handcuffs. Furthermore, as discussed above, Smith has failed to demonstrate any prejudice resulting from having one hand restrained. Because Smith fails to demonstrate that his trial counsel rendered deficient performance that prejudiced his case, his claim of ineffective assistance of counsel fails.

E.    OFFENDER SCORE

Smith argues that the trial court erred in calculating his offender score because his prior Oregon convictions (1) were not comparable to Washington felonies and should not have been included in his offender score and (2) should have been "washed out." Br. of Appellant at 36. At trial, Smith stipulated to his criminal history, which included the Oregon convictions. The State

argues that Smith waived any challenge to the calculation of his offender score because he expressly acknowledged his criminal history, which includes out-of-state convictions. We disagree.

We review de novo the trial court's calculation of a defendant's offender score. *State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187 (2014). A defendant's offender score, together with the seriousness level of his current offense, dictates the standard sentencing range used in determining his sentence. RCW 9.94A.530(1). "If a defendant has been erroneously sentenced, we remand [the] case to the sentencing court for resentencing."[14] *State v. Ross*, 152 Wn.2d 220, 229, 95 P.3d 1225 (2004).

A trial court properly includes an out-of-state prior conviction in a defendant's offender score only if the convictions are comparable to Washington convictions. *State v. Arndt*, 179 Wn. App. 373, 378, 320 P.3d 104 (2014); *see* RCW 9.94A.530(1), former RCW 9.94A.525(3) LAWS OF 2013, 2d Spec. Sess., ch. 35, § 8. Generally, the State bears the burden of proving by a preponderance of the evidence the existence and comparability of the out-of-state offenses. *Olsen*, 180 Wn.2d at 472. However, a trial court can properly include a defendant's out-of-state convictions in a defendant's offender score where the defendant affirmatively acknowledges the existence and comparability of the prior convictions. *State v. Mendoza*, 165 Wn.2d 913, 927, 205 P.3d 113 (2009); *see Ross*, 152 Wn.2d at 233. The "mere failure to object to a prosecutor's

---

[14] To the extent that Smith argues that the sentencing court cannot rely on the underlying facts of the out-of-state conviction in its comparability analysis, he is incorrect. In making its factual determination about the comparability of an out-of-state conviction, "the sentencing court may rely on facts in the out-of-state record only if they are admitted, stipulated to, or proved beyond a reasonable doubt." *State v. Arndt*, 179 Wn. App. 373, 379, 320 P.3d 104 (2014).

assertions of criminal history does not constitute such an acknowledgment." *Mendoza*, 165 Wn.2d at 928. If the defendant does not affirmatively acknowledge the existence and comparability, the trial court must make a factual determination about whether the out-of-state convictions are comparable to Washington convictions. *Id.*; *Arndt*, 179 Wn. App. at 379; RCW 9.94A.525(3).

Here, although Smith stipulated to his criminal history, the record does not demonstrate that Smith stipulated to the comparability of his prior Oregon convictions to Washington felonies.[15] Therefore, Smith did not affirmatively acknowledge that his prior Oregon convictions were comparable and properly included as a basis for his offender score. Because Smith did not stipulate to the comparability of his out-of-state convictions and the trial court did not analyze the comparability of Smith's out-of-state convictions, we remand to the sentencing court for resentencing.

Smith's argument that his prior Oregon conviction should have been "washed out" is premised on his argument that the Oregon conviction is not comparable to a Washington conviction. On remand, Smith can raise his comparability and washout arguments, and the State can present additional evidence regarding Smith's prior convictions. *See Mendoza*, 165 Wn.2d at 930.

---

[15] On appeal, Smith did not provide a record of his written stipulation or evidence of the underlying Oregon convictions.

F.    LEGAL FINANCIAL OBLIGATIONS

    1.    Current or Future Ability to Pay

Smith challenges the trial court's imposition of various LFOs. Smith did not object below, and we need not consider challenges to a trial court's imposition of LFOs for the first time on appeal. *State v. Blazina*, 182 Wn.2d 827, 832-33, 344 P.3d 680 (2015). We exercise our discretion and decline to address Smith's challenge to the imposition of LFOs made for the first time on appeal.[16] RAP 2.5(a); *Blazina*, 182 Wn.2d at 832-33. However, on remand, we instruct the sentencing court to consider Smith's current or future likely ability to pay discretionary LFOs before imposing them, pursuant to the Supreme Court's recent *Blazina* decision. *Blazina*, 182 Wn.2d at 839.

    2.    Fingerprinting Fees

Smith also argues that the trial court exceeded its authority by including a fingerprinting cost in Smith's LFOs. We disagree.

RCW 10.01.160 provides that "[t]he court may require a defendant to pay costs" and that those "[c]osts shall be limited to expenses specially incurred by the state in prosecuting the defendant." Smith summarily asserts that "any costs associated with taking [Smith's] fingerprints were not 'specially incurred by the state in prosecuting' [Smith]." Br. of Appellant at 44.

---

[16] Smith was sentenced over six months after we published *Blazina*, holding that we would not consider challenges to the trial court's imposition of LFOs for the first time on appeal. 174 Wn. App. 906, 301 P.3d 492, *review granted,* 178 Wn. 2d 1010, 311 P.3d 27 (2013). Therefore, Smith was on notice that we would not consider an appeal of the trial court's imposition of LFOs unless it was challenged in the trial court.

No. 45777-6-II

Smith's assertion, however, is belied by the record. The State requested that the LFOs include expert fees for fingerprinting because

> the Court did order [the expert] be made available for fingerprinting because [Smith] wasn't stipulating to his sex offense initially and then we did find out, I think the night before trial, that he'd be stipulating. We had then no need for the fingerprints to be ordered taken and [the expert] to show up the next morning.

VRP at 125-26. The record indicates that the costs were an expense for an expert specifically ordered to be available for the prosecution of Smith. Accordingly, the trial court did not exceed its authority by imposing the fingerprinting cost. *See* RCW 10.01.160.

We affirm Smith's conviction, but remand for resentencing, for the sentencing court to determine the comparability of Smith's out-of-state convictions and Smith's current and likely future ability to pay discretionary LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Maxa, J.

13