# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54574-8-II |
| Respondent, | |
| v. | |
| R.W.-W., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — R.W.-W. appeals the juvenile court's disposition finding him guilty of first degree rape of a child.  R.W.-W. argues that (1) the juvenile court failed to enter specific findings of fact to permit meaningful appellate review; (2) Article I, Sections 21 and 22 of the Washington Constitution and the Sixth Amendment of the U.S. Constitution afford juveniles the right to a jury trial, which he was deprived; and (3) mandatory sex offender registration for juvenile offenders violates his due process rights.

We hold that the juvenile court's findings of fact permit meaningful appellate review.  We do not address R.W.-W's arguments, raised for the first time on appeal, regarding whether juveniles have a constitutional right to a jury trial or whether R.W.-W.'s due process rights were violated by the mandatory sex offender registration requirement.  Therefore, we affirm the juvenile court's disposition finding R.W.-W. guilty of first degree rape of a child.

## FACTS

The State charged R.W.-W., who was 14 years old at the time of the incident, with first degree rape of a child and second degree rape of a child in juvenile court.  The incident leading to

the charges involved L.H.,[1] who was 10 years old at the time of the incident. At the bench trial, the State presented testimony from a number of witnesses, including L.H. and L.H.'s mother, Crystal Johnson.

L.H. testified that he was playing with R.W.-W. in his pool alone. When L.H. went to get out of the pool, R.W.-W. grabbed him by his shorts, pulled them off, "and then, like, just, you know, tried to—you know what I'm saying?" Verbatim Report of Proceedings (VRP) (Dec. 11, 2019) at 137.

The State then offered and the trial court admitted Exhibit 2 into evidence. L.H. identified Exhibit 2 as a statement L.H. wrote with his father regarding the incident. In the statement, L.H. said that when he was going to get out of the pool, R.W.-W. grabbed him and told him, "I'm going to put my thing in your b[***]." VRP (Dec. 11, 2019) at 246. L.H. then stated, "[H]e grabbed me again, pulled me down, and started doing it." VRP (Dec. 11, 2019) at 246.

After reading the statement, the State asked L.H. what happened when he tried to get out of the pool. L.H. stated, "Well, then he tried to, like, I guess you could say put his penis near my b[***] hole, like, put it in but—well, yeah." VRP (Dec. 11, 2019) at 141. L.H. continued, "I mean, not only did he try, he almost did, but then—I mean, he did." VRP (Dec. 11, 2019) at 141.

On cross-examination, R.W.-W.'s counsel asked L.H., "You said [R.W.-W.] tried, right? You said a couple of times he was trying, or he tried." VRP (Dec. 11, 2019) at 159. L.H. responded, "He was trying, and then, well, I guess he succeeded." VRP (Dec. 11, 2019) at 159.

---

[1] We use initials for this witness pursuant to our General Order 2011-1.

Johnson also testified regarding the incident between L.H. and R.W.-W. She stated that she learned of the incident when "a number of kids came over and told [her] what had happened." VRP (Dec. 11, 2019) at 97. Johnson then called L.H., who was in the car with his father. L.H. was not comfortable talking about the incident over the phone while in the car, so Johnson asked him a series of yes-or-no questions.

Johnson first asked if R.W.-W. "put his d[***] in your a[**]." VRP (Dec. 11, 2019) at 98. L.H. responded, "[Y]es." VRP (Dec. 11, 2019) at 98. She then asked L.H. where the incident happened. L.H. said it happened in the pool at their house. Johnson further asked, "Does your b[***] hole hurt." VRP (Dec. 11, 2019) at 98. L.H. responded, "[Y]es." VRP (Dec. 11, 2019) at 98.

After hearing the evidence, the juvenile court found that L.H.'s testimony was the most critical in the case, the evidence of L.H. changing his story "was very thin," and L.H.'s testimony was "credible and consistent, it has the ring of truth, the disclosure to the other children shortly after." VRP (Jan. 10, 2020) at 347. The juvenile court further found that the testimony of L.H.'s mother was "fairly consistent. She wanted the truth to come out." VRP (Jan. 10, 2020) at 347. The juvenile court also found that the medical exam findings by Dr. Kimberly Copeland, the physician who examined L.H. after the incident, were completely normal. Based on these findings, the juvenile court found R.W.-W. guilty of first degree rape of a child. The juvenile court also found that it was "not satisfied as to the quantum of proof on the second charge of the rape in the second degree because the evidence of forcible compulsion was not persuasive enough." VRP (Jan 10, 2020) at 348.

No. 54574-8-II

The juvenile court entered written findings of fact and conclusions of law. The juvenile court made the following written findings:

1. On July 2, 2018, the Respondent had sexual intercourse with LPH.
2. LPH was less than twelve years old at the time of the sexual intercourse and was not married to the Respondent.
3. LPH, being born on January 22, 2008, was at least twenty-four months younger than the Respondent, born on November 20, 2004.
4. This act occurred in Clark County Washington.
5. LPH's testimony was credible, consistent, and helps prove the above stated facts beyond a reasonable doubt.

Clerk's Papers (CP) at 70-71.

The juvenile court sentenced R.W.-W. to a standard range of 15 to 36 weeks of commitment. As a result of his disposition for a class A felony sex offense, the juvenile court imposed a sex offender registration requirement.

R.W.-W. appeals.

ANALYSIS

A. ADEQUACY OF FINDINGS OF FACT

R.W.-W. argues that the juvenile court failed to enter adequate findings of fact to permit meaningful appellate review. We disagree.

1. Legal Principles

A juvenile court "shall state its findings of fact and enter its decision on the record." JuCR 7.11(c). The court "shall enter written findings and conclusions." JuCR 7.11(d). The written findings "shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision." JuCR 7.11(d). Written findings and conclusions are

4

required to enable adequate appellate review. *State v. Bynum*, 76 Wn. App. 262, 266, 884 P.2d 10 (1994), *review denied*, 126 Wn.2d 1012 (1995).

The findings of fact "must specifically state the ultimate facts necessary to support a conviction." *State v. Avila*, 102 Wn. App. 882, 896, 10 P.3d 486 (2000), *review denied*, 143 Wn.2d 1009 (2001). "Ultimate facts" are "'[t]he logical conclusions deduced from certain primary evidentiary facts.'" *State v. Roggenkamp*, 115 Wn. App. 927, 948-49, 64 P.3d 92 (2003) (internal quotation marks omitted) (quoting *State v. Alvarez*, 128 Wn.2d 1, 15 n.15, 904 P.2d 754 (1995)). They are "distinguished from evidentiary facts supporting them." *Id*. at 948 (internal quotation marks omitted) (quoting *Alvarez*, 128 Wn.2d at 15 n.15).

"If findings of fact and conclusions of law do not state the 'ultimate' facts, that error can be cured by remand." *Alvarez*, 128 Wn.2d at 19. But a remand is not necessary in cases where the juvenile court entered a "comprehensive oral ruling," rendering noncompliance with JuCR 7.11(d) inconsequential. *Bynum*, 76 Wn. App. at 265.

An individual is guilty of first degree rape of a child when they have "sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." Former RCW 9A.44.073(1) (1988). "'Sexual intercourse' . . . has its ordinary meaning and occurs upon any penetration." RCW 9A.44.010(1)(a). "'Sexual intercourse' . . . also means any act of sexual contact between the persons involving the sex organs of one person and the . . . anus of another." RCW 9A.44.010(1)(c).

2.     Findings of Fact Sufficient for Review on Appeal

R.W.-W. argues that the juvenile court failed to enter adequate findings of fact. But here, the juvenile court entered written findings of fact that mirror the elements required to find an individual guilty of first degree rape of a child. Under the written findings of fact, the juvenile court found that "the Respondent had sexual intercourse with LPH," that "LPH was less than twelve years old at the time of the sexual intercourse and was not married to the Respondent," and that "LPH, being born on January 22, 2008, was at least twenty-four months younger than the Respondent, born on November 20, 2004." CP at 70. These findings are logical conclusions that can be deduced from the evidence presented at trial.

The juvenile court deduced these logical conclusions from the primary evidentiary facts as stated under finding of fact 5: "LPH testimony was credible, consistent, and helps prove the above stated facts beyond a reasonable doubt." CP at 71. And the juvenile court's ultimate findings are further supported by the court's oral ruling, where the trial court's decision was obviously based on L.H.'s and Johnson's testimony; the juvenile court found that L.H.'s testimony was "the most critical," that Johnson "wanted the truth to come out," and that Johnson's testimony was "fairly consistent." VRP (Jan. 10, 2020) at 346-47.

R.W.-W. further argues that the juvenile court's findings were inadequate to permit meaningful review because the juvenile court referenced L.H.'s testimony as a whole in its decision, yet L.H. made various inconsistent statements during his testimony. The record fails to support this argument.

At trial, L.H. testified that when he tried to get out of the pool, R.W.-W. grabbed him by the shorts, pulled them off, "and then, like, just, you know, tried to—you know what I'm saying?"

6

VRP (Dec. 11, 2019) at 137.  The State then offered and admitted Exhibit 2 into evidence.  Exhibit 2 was the statement L.H. wrote with his father regarding the incident.  In the statement, L.H. wrote that "he grabbed me again, pulled me down, and started doing it."  VRP (Dec. 11, 2019) at 246.  After reading the statement, L.H. first stated, "Well, then he tried to, like, I guess you could say put his penis near my b[***] hole but, like, put it in but—well, yeah."  VRP (Dec. 11, 2019) at 141.  L.H. continued, "I mean, not only did he try, he almost did, but then—I mean, he did."  VRP (Dec. 11, 2019) at 141.  During cross-examination, R.W.-W.'s counsel asked L.H., "You said [R.W.-W.] tried, right?"  VRP (Dec. 11, 2019) at 159.  L.H. responded, "I guess he succeeded."  VRP (Dec. 11, 2019) at 159.

While each time L.H. spoke of the incident he began by saying that R.W.-W. tried to penetrate him, L.H. also corrected his language to reflect that R.W.-W. succeeded.  The juvenile court relied on this testimony in finding that R.W.-W. had sexual intercourse with L.H.  And the juvenile court found that L.H.'s testimony was "credible and consistent."  VRP (Jan. 10, 2020) at 347.  We do not review on appeal the credibility determinations made by the fact finder.  *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).  Further, whether or not testimony is credible does not affect whether the juvenile court made insufficient findings to allow for appellate review.

We hold that the juvenile court made ultimate findings of fact and stated the evidence upon which it relied.  Remand is not necessary because the juvenile court's oral and written findings and conclusions are sufficient to permit meaningful appellate review.

B.    CONSTITUTIONAL RIGHT TO JURY TRIAL

R.W.-W. argues that article I, sections 21 and 22 of the Washington Constitution and the Sixth Amendment of the U.S. Constitution afford juveniles the right to a jury trial.  The State

7

argues that R.W.-W. waived his right to appeal the issue of whether juveniles have a right to a jury trial because he did not present his arguments to the juvenile court. We agree with the State.

We "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). But a party may raise a claim for the first time on appeal when it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). An error is "manifest" if an appellant shows actual prejudice. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). To demonstrate actual prejudice, there must be a plausible showing by the appellant that the asserted error had practical and identifiable consequences in the proceedings of the case. *Id*.

"Cases in the juvenile court shall be tried without a jury." RCW 13.04.021(2). R.W.-W. argues that this statute is unconstitutional because it violates the guarantees to a jury trial in the state and federal constitutions.

Under article I, section 21 of the Washington Constitution "[t]he right of trial by jury shall remain inviolate." Under article I, section 22 of the Washington Constitution, the accused has the right "to have a speedy public trial by an impartial jury" in criminal prosecutions. Under the Sixth Amendment of the U.S. Constitution, "the accused shall enjoy the right to a speedy and public trial, by an impartial jury" in all criminal prosecutions.

Whether a statute is unconstitutional is a question of law that we review de novo. *State v. Chavez*, 163 Wn.2d 262, 267, 180 P.3d 1250 (2008). Over the past 50 years, the Washington Supreme Court has consistently rejected the argument that RCW 13.04.021(2) violates article I, sections 21 and 22 of the Washington Constitution, as well as the Sixth Amendment of the U.S. Constitution. *See id.* at 274 (holding no right to a jury trial in juvenile proceedings under article I, sections 21 and 22 of the Washington Constitution, as well as the Sixth Amendment of the U.S.

8

Constitution); *Monroe v. Soliz*, 132 Wn.2d 414, 419, 939 P.2d 205 (1997) (holding RCW 13.40.280 does not violate an individual's right to a jury trial because an individual does not have that right in a juvenile proceeding); *State v. Schaaf*, 109 Wn.2d 1, 21, 743 P.2d 240 (1987) (holding a jury trial is not constitutionally guaranteed in juvenile proceedings); *State v. Lawley*, 91 Wn.2d 654, 659, 591 P.2d 772 (1979) (holding "jury trials are not necessary in juvenile adjudicatory proceedings"); *Estes v. Hopp*, 73 Wn.2d 263, 268, 438 P.2d 205 (1968) (holding the right to a jury trial does not apply in juvenile adjudicatory proceedings).[2]

R.W.-W. argues that the Washington Constitution is more protective of the right to a jury trial than the federal constitution. For support, R.W.-W. relies on *State v. Smith*, 150 Wn.2d 135 75 P.3d 934 (2003), *review denied,* 541 U.S. 909 (2004).

In *Smith*, the Washington Supreme Court found, after conducting a *Gunwall*[3] analysis, that the right to a jury trial may be broader under the state constitution than under the federal constitution. *Id.* at 156. But 5 years after *Smith*, the Washington Supreme Court again reaffirmed that article I, sections 21 and 22 do not provide individuals in juvenile proceedings with the right to a jury trial. *Chavez*, 163 Wn.2d at 272. The court in *Chavez* specifically reaffirmed the analysis of the *Gunwall* factors employed in *Schaaf*. *Id.* at 269. Therefore, following *Chavez*, the constitutional right to a jury trial does not apply to cases in juvenile court.

---

[2] The Washington Supreme Court recently denied review of a case addressing this exact issue. *See State v. J.K.T.*, 11 Wn. App. 2d 544, 455 P.3d 173 (2019), *review denied*, 195 Wn.2d 1017 (2020).

[3] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

Because juveniles do not have a constitutional right to a jury trial, R.W.-W. has failed to show any manifest error affecting a constitutional right. Therefore, we do not address R.W.-W.'s claim raised for the first time on appeal that RCW 13.04.021(2) is unconstitutional.

## C.  MANDATORY SEX OFFENDER REGISTRATION

R.W.-W. argues that his procedural and substantive due process rights were violated by the mandatory sex offender registration requirement for juveniles found guilty of sex offenses. The State again argues that R.W.-W. has waived his right to appeal the issue of whether mandatory sex offender registration for juveniles violates his substantive and procedural due process rights because he did not raise the argument with the juvenile court.

As noted above, a party waives any argument raised for the first time on appeal unless the party can show a manifest error affecting a constitutional right. RAP 2.5(a)(3); *O'Hara*, 167 Wn.2d at 99. Because R.W.-W. fails to show a manifest error affecting a constitutional right, he has waived his challenge to the mandatory sex offender registration requirement for juveniles.

A juvenile in Washington "who has been found to have committed or has been convicted of any sex offense . . . shall register with the county sheriff." RCW 9A.44.130(1)(a). A juvenile offender may petition the superior court to be relieved of their duty to register if they have not been determined to be a sexually violent predator. RCW 9A.44.143(1). This may occur after 24 months have passed since the juvenile's adjudication and completion of any term of confinement if the offense was committed when the juvenile was younger than 15 years old. RCW 9A.44.143(3)(a).

1.      Procedural Due Process Rights

R.W.-W. argues that his procedural due process rights were violated by the mandatory sex offender registration requirement for juvenile offenders. Specifically, R.W.-W. contends that, to comport with procedural due process, the sex offender registration requirement should only be imposed after an evidentiary hearing to determine whether the juvenile is a risk to sexually reoffend. We disagree that R.W.-W.'s procedural due process rights were violated.

Juveniles have a right to procedural due process. *State v. Watkins*, 191 Wn.2d 530, 537, 423 P.3d 830 (2018). To determine what process is due in a given context, courts apply the test enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). This test balances (1) the private interest affected, (2) the risk of erroneous deprivation of that interest through existing procedures and the probable value of additional procedural safeguards, and (3) the government interest, including costs and administrative burdens of additional procedures. *Id*. In determining whether due process was violated, we must balance each factor. *Id*.

a.      Private interest affected

Under the first *Mathews* factor, we evaluate the private interest affected. *Id*. In addressing this first *Mathews* factor, R.W.-W. argues that "a child under juvenile court jurisdiction has a significant interest in not being subject to adult criminal laws." Br. of Appellant at 30.

While both adults and juveniles are subject to the mandatory sex offender registration requirement, the mandatory registration statute draws a distinction between adult offenders and juvenile offenders. Juvenile offenders are given the possibility of relief from the duty to register much sooner than adult offenders. RCW 9A.44.142, .143. An adult is only eligible to petition for relief from registration after 10 years. RCW 9A.44.142(1)(b). A juvenile, however, is eligible to

petition for relief after 5 years if the juvenile was 15 years old or older when they committed the offense or after 2 years if the juvenile was under 15 years old when they committed the offense. RCW 9A.44.143(2)(a), (3)(a). Also, an adult convicted of a sex offense that is a class A felony and that was committed with forcible compulsion may never petition for relief from registration. RCW 9A.44.142(2)(a)(ii). This is not the case for a juvenile offender.

R.W.-W. also contends that the mandatory sex offender registration requirement punishes juveniles where the system is supposed to be rehabilitative. But mandatory sex offender registration is not punitive—it is a regulatory measure. *Russell v. Gregoire*, 124 F.3d 1079, 1089 (1997), *cert. denied*, 523 U.S. 1007 (1998). "Registration does no more than apprise law enforcement officials of certain basic information about an offender living in the area." *Id.* at 1087. "[N]o affirmative restraint or disability is imposed." *Id.* at 1089. And there is no evidence in the record that shows registration affected R.W.-W.'s ability to get a job, find housing, or travel. *See State v. Boyd*, 1 Wn. App. 2d 501, 511, 408 P.3d 362 (2017), *review denied*, 190 Wn.2d 1008, *cert. denied*, 139 S. Ct. 639 (2018). Therefore, the first *Mathews* factor weighs against a finding that the mandatory sex registration requirement for juvenile sex offenders violates procedural due process.

      b.     Risk of erroneous deprivation of interest

Under the second *Mathews* factor, we evaluate the risk of erroneous deprivation of the private interest through existing procedures and the probable value of additional procedural safeguards. 424 U.S. 335. R.W.-W. argues that the risk of erroneous deprivation is high where juvenile court procedures lack the same constitutional protections afforded adult defendants; specifically, a jury trial. We disagree.

Juvenile courts are primarily rehabilitative. *Chavez*, 163 Wn.2d at 269-70. However, procedures exist within the juvenile court system that provide safeguards against erroneous deprivation of rights. *McKeiver v. Pennsylvania*, 403 U.S. 528, 533, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971). For example, a juvenile must still be found guilty beyond a reasonable doubt by the trier of fact. *Id*. And a juvenile has the right to appeal the juvenile court's order. RCW 13.04.033(1). Further, a juvenile has "the rights to appropriate notice, to counsel, to confrontation and to cross-examination, and the privilege against self-incrimination." *Id*. Therefore, even though a juvenile does not have the right to a trial by jury, a significant number of other safeguards exist to protect against the risk of erroneous deprivation. The second *Mathews* factor weights against a finding that mandatory sex registration for juveniles violates procedural due process.

c. Governmental interest

Under the third *Mathews* factor, we evaluate the governmental interest at stake, as well as the additional administrative and fiscal burdens of further procedures. 424 U.S. at 335. R.W.-W. does not address the governmental interest at stake. Instead, R.W.-W. focuses on the argument that the burdens placed on the government by the addition or substitution of procedures would be minimal.

R.W.-W. references an Indiana law, which states that a child is entitled to an evidentiary hearing to decide whether the child is likely to reoffend. Ind. Code 11-8-8-5(b)(2); *N.L. v. State*, 989 N.E.2d 773, 780 (2013). Yet, R.W.-W. ignores that fact that an increased number of hearings creates an incremental cost that would burden the government. *See Mathews*, 424 U.S. at 348 (finding a governmental interest "in conserving scarce fiscal and administration resources . . . that must be weighed").

The government has an interest in conserving administrative resources that must be weighed, and an additional evidentiary hearing would place administrative burdens on the juvenile court that affect the timely disposition of cases. *Id.* In this case specifically, the trial court stated, "[T]here's a deep dissatisfaction with the fact an incident alleged to have occurred in July of 2018 is now making it to trial in January 2020." VRP (Jan. 10, 2020) at 348. The trial court continued, "I think we can do better for the youth of our community on both sides of this table by getting a case like this more promptly to trial, to resolution, and to some sort of disposition." VRP (Jan. 10, 2020) at 349. Requiring an additional evidentiary hearing would slow juvenile proceedings even further.

R.W.-W. also argues that research shows juveniles pose a very low risk to sexually reoffend. R.W.-W. contends that the low risk "defeat[s] the legislature's reason for subjecting them to mandatory sex offender registration." Br. of Appellant at 37. R.W.-W. cites to an amicus brief that contends that there is a "common finding among researchers . . . 'that there is no significant relationship between specific risk factors and youth sexual recidivism.'" Br. of Appellant at 38 (quoting Br. of Appellant Appendix at 19 (Amicus Brief, *Commonwealth v. Juvenile*, No. SJC-12790 (January 2020)).

But "the constitution does not require legislatures to 'have scientific or exact proof of the need for legislation.'" *State v. Smith*, 185 Wn. App. 945, 955, 344 P.3d 1244, *review denied*, 183 Wn.2d 1011 (2015) (quoting *State v. J.D.*, 86 Wn. App. 501, 508, 937 P.2d 630 (1997)). There need only be an evidentiary nexus between the law's purpose and effect. *Id.* The legislature imposed the mandatory sex offender registration requirement "after considering recommendations from the Governor's Task Force on Community Protection and after hearing testimony from

representatives of several interested groups." *Id.* at 955-56. Based on these recommendations and testimony, the legislature was not "unfounded" in its decision to require mandatory registration. *See id.* at 956. This factor weighs against finding a violation of procedural due process.

"The state has a compelling interest in promoting the health, safety, and welfare of its citizens." *Id.* at 955. Mandatory registration of sex offenders serves this interest. *Id.* "[I]t is not excessive given the state interest at stake." *Gregoire*, 124, F.3d at 1089. Registration assists law enforcement agencies' efforts to protect their communities against sex offenders who may be likely to re-offend. *State v. Stratton*, 130 Wn. App. 760, 765, 124 P.3d 660 (2005). In evaluating the government interest at stake, as well as the additional administrative and fiscal burdens of further procedures the third *Mathews* factor weighs against a finding that mandatory sex registration for juveniles violates procedural due process.

In balancing R.W.-W.'s private interest, the risk of erroneous deprivation, and the State's interest, procedural due process does not mandate that an evidentiary hearing is necessary to determine a juvenile offender's risk of re-offence before requiring mandatory sex offender registration. Thus, R.W.-W. has not shown a procedural due process violation.

2.      Substantive Due Process Rights

R.W.-W. argues that mandatory sex offender registration for juvenile offenders violates substantive due process. We disagree.

The Fourteenth Amendment to the U.S. Constitution prohibits the government from depriving an individual of "life, liberty, or property, without due process of law." U.S. CONST., amend. XIV, § 1. "[J]uveniles are developmentally different from adults and these differences are relevant to juvenile defendants' constitutional rights." *Watkins*, 191 Wn.2d at 544. Any

constitutional analysis regarding a juvenile defendant should take youthfulness into account. *Id.* at 544-45.

R.W.-W. was required to register as a sex offender because he committed a class A felony sex offense. RCW 9A.44.130(1)(a). R.W.-W. argues that mandatory sex offender registration for juvenile offenders denies a child the substantive right to be treated with the reduced culpability that attaches by virtue of their young age and immaturity.

We agree that "'there *are* differences which must be accommodated in determining the rights and duties of children as compared with those of adults.'" *Thompson v. Oklahoma*, 487 U.S. 815, 822, 108 S. Ct. 2687 101 L. Ed. 2d 702 (1988) (quoting *Goss v. Lopez*, 419 U.S. 565, 590-91, 95 S. Ct. 729` 42 L. Ed. 2d 725 (1975) (dissenting opinion)). Washington statutes provide such accommodations. As discussed above, while both adults and juveniles are subject to the mandatory sex offender registration, juvenile offenders are given the possibility of relief from the duty to register much sooner than adult offenders. RCW 9A.44.143. Further, an adult convicted of a sex offense that is a class A felony and that was committed with forcible compulsion may never petition for relief from registration. RCW 9A.44.142(2)(a)(ii). Juvenile offenders are not similarly precluded.

Further, RCW 9A.44.143 provides for separate categories based on the age of the offender. Under RCW 9A.44.143(2), a juvenile offender who was 15 years or older when the offenses were committed may petition the court for relief after at least 60 months, or 5 years, have passed since the juvenile's adjudication and completion of any term of confinement for the offense. RCW 9A.44.143(2)(a). On the other hand, a juvenile offender "not included in subsection (2)" may petition the court for relief after at least 24 months have passed since adjudication or completion

of confinement.  RCW 9A.44.143(3)(a).  This includes all juvenile offenders who were under the age of 15 when they committed sex offenses.

Contrary to R.W.-W.'s contention, mandatory registration for R.W.-W. is not an "onerous, lifelong condition[]."  Br. of Appellant at 40.  Instead, R.W.-W. is eligible for relief of this requirement after two years because he was under the age of 15 when he committed the offense. *See* RCW 9A.44.143(3)(a).  As such, we hold that substantive due process rights are not violated by mandatory sex offender registration for juvenile offenders.

In sum, the mandatory sex registration requirement complies with both procedural and substantive due process.  In balancing R.W.-W.'s private interest, the risk of erroneous deprivation, and the State's interest, procedural due process does not mandate that an evidentiary hearing is necessary to determine a juvenile offender's risk of re-offence before requiring mandatory sex offender registration.  Further, the mandatory sex registration requirements do not violate liberty interests protected by substantive due process.  Therefore, R.W.-W. has failed to show any manifest error affecting a constitutional right.  Accordingly, we do not address R.W.-W.'s due process violation claims raised for the first time on appeal.

We affirm the juvenile court's disposition finding R.W.-W. guilty of first degree rape of a child.

No. 54574-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

, C.J.
Lee, C.J.

We concur:

Maxa, J.

Sutton, J.